403 So.2d 149 (1981)
Dwayne MURRAY
v.
STATE of Mississippi.
No. 52632.
Supreme Court of Mississippi.
September 9, 1981.
Carver A. Randle, Indianola, for appellant.
Bill Allain, Atty. Gen. by Karen Gilfoy, Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and LEE and HAWKINS, JJ.
*150 HAWKINS, Justice, for the Court:
Hezeki Cathey and the appellant Dwayne Murray were indicted by the grand jury of Sunflower County on a charge of aggravated assault upon Willie Winters, a corrections officer with the Mississippi Department of Corrections at Parchman.[1] From this conviction and sentence of 15 years with 5 years suspended by the circuit court of that county, Murray has perfected this appeal.
On February 3, 1980, Cathey and the appellant Murray were inmates at the Mississippi Department of Corrections in Parchman, housed in C Unit of Camp 24.
At approximately 10 minutes before 9:00 o'clock that evening, officers Willie L. Winters and Frank Grammer were sitting at a desk in the day room, a large central control area, designated as Zone 5. Zone 5 was surrounded by four quarter areas, designated respectively as Zones 1, 2, 3 and 4, and separated by a glass partition, enabling the officers to view all zones. Metal partitions separated the remaining zones. The door to Zone 1 was used by the officers to enter the day room, and this door was not locked. The doors from the day room to the other zones were locked.
Cathey was in the Zone 2 area and knocked on the window or door, attracting the officers attention. When Cathey told him he wanted to go to another zone and write a letter, Officer Grammer unlocked the door.
While the officers attention was thus diverted, Murray, who was in Zone 1, came through the unlocked door, armed with a "shank" and grabbed Officer Winters. During this time Cathey, also armed with a shank, grabbed Officer Grammer. A "shank" is a homemade weapon of sharpened steel, apparently on the order of a spike, about the size of a sharpened pencil.
*151 Murray then pulled Officer Winters away from the desk, and with the shank at his throat told him, "Officer, I want the keys. Lay on the floor and give me the keys." Murray wanted the zone door keys in Officer Winters' back pocket, and Murray told him to turn over. Winters did as he was told, and Murray, still holding the shank on him, removed Winters' keys.
After Murray got the keys, he went to Zone 4 and attempted without success to unlock the door. Still threatening Winters with the shank, Murray handed the keys to Winters and told him to open the door. Winters did so and Murray told the inmates to come out.
Winters and Murray then unlocked the Zone 3 door and walked to Cell 41 confining one Shelby Myers, and Murray told Myers to come out. Myers remained, and Winters and Murray proceeded to Cell 39, which was vacant. Murray left Winters there and returned to Zone 5, the day room.
During this time another inmate, Theodore Fields, acting as peacemaker, kept telling Murray not to hurt Winters. He also told Murray and Cathey, "This is not going to work; let the officer go." The other inmates, though curious, did not participate in any of this conduct.
Fields, Cathey and Officer Grammer then got Winters out of Cell 39, and they all went to Zone 5. Murray was no longer threatening anyone, and the officers were told to call the administrator, the warden, the commissioner, and the governor. Cathey then surrendered his shank to Grammer, and a few minutes later Murray also surrendered his.
Officer Winters said Murray never touched him with the shank, and testified as follows:
Q. Did he (Murray) at any time harm you or attempt to harm you?
A. No more than hold the shank on me.
Q. Just held it on you?
A. He stated that if I gave him the keys in the beginning that I wouldn't be hurt, and so I gave him the keys.
Officer Winters testified further:
Q. Did you ever try to talk to him at the time he allegedly held the shank on you?
A. No, I didn't. I couldn't talk to him  I didn't try to talk to him because he had his mind set on give him the keys and it wasn't anything going to happen to me, so I gave him the keys.
Murray did not testify. Cathey did, however, and the only reason for this conduct by these inmates came from Cathey, who testified that there was some problem with heating and plumbing, for which they wanted some attention.
Prior to trial the defendant filed a written motion to reduce the charge against him from aggravated assault to simple assault, which was overruled.
When the State rested, Murray's counsel moved for a directed verdict, assigning the State had failed to prove the elements of the crime for which Murray was charged. This motion was overruled, was not renewed when both sides rested, and no request for a peremptory instruction was filed. The jury returned a guilty verdict of aggravated assault, the only issue submitted to it, and the circuit judge sentenced Murray to a term of 15 years, with 5 years suspended.
A motion for a new trial on the ground of insufficiency of the evidence was overruled, and this appeal has been taken. The only error assigned states that the trial court erred in overruling the motion for a new trial. The brief of appellant does not contain a single citation of legal authority, and is of no benefit whatever to appellant or this Court. In the ordinary civil case such a brief submitted by appellant's counsel would result in an affirmance of the lower court.
In 1974, the Legislature revised the statutory crimes of assault and assault and battery. 1974 Miss. Laws, Ch. 458 (codified in Mississippi Code Annotated § 97-3-7 (Supp. 1980)). The first paragraph of this act defines simple assault and provides the punishment therefor. The pertinent portions read as follows:

*152 (1) A person is guilty of simple assault if he . .. (c) attempts by physical menace to put another in fear of imminent serious bodily harm; ... a person convicted of simple assault upon a law enforcement officer ... while such law enforcement officer . .. is acting within the scope of his duty and office shall be punished by a fine of not more than one thousand dollars ($1,000.00) or by imprisonment for not more than five (5) years, or both.
The second paragraph of the act deals with aggravated assault and the punishment therefor, the pertinent portions of which read as follows:
(2) A person is guilty of aggravated assault if he... (b) attempts to cause ... bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; ... a person convicted of aggravated assault upon a law enforcement officer ... while such law enforcement officer ... is acting within the scope of his duty and office shall be punished by a fine of not more than five thousand dollars ($5,000.00) or by imprisonment for not more than thirty (30) years, or both.
The serious question before this Court from an examination of the record is whether the accused is guilty of aggravated assault or the lesser offense embraced therein of simple assault.
To be guilty of aggravated assault under facts as revealed in this record it is necessary that the accused "attempted to cause bodily injury to another with a deadly weapon." The key word is "attempt," and the question is: did the defendant attempt to cause bodily injury to Winters with a deadly weapon?[2]
This Court has had numerous occasions to define the word "attempt" and its application to the particular types of cases Williams v. State, 209 Miss. 902, 48 So.2d 598 (1950); Dill v. State, 149 Miss. 167, 115 So. 203 (1928); Wigginton v. State, 136 Miss. 825, 101 So. 856 (1924); Miller v. State, 130 Miss. 730, 95 So. 83 (1922); Powell v. State, 128 Miss. 107, 90 So. 625 (1921); Thompson v. Krutzer, 103 Miss. 388, 60 So. 334 (1912). Generally "attempt" means an intent to do a certain thing, and some actual, overt effort to put the intent into effect.
Two cases in this Court best delineate "attempt" as applicable to this case. In Jones v. State, 172 Miss. 597, 601-02, 161 So. 143, 144 (1935), this Court stated: "... an attempt implies both purpose and an actual effort to carry that purpose into execution."
In Bucklew v. State, 206 So.2d 200, 202 (Miss. 1968), we stated:
Under the general law it has been pointed out that an attempt to commit a crime consists of three elements: (1) an intent to commit a particular crime; (2) a direct ineffectual act done toward its commission; and (3) the failure to consummate its commission.
* * * * * *
In a considerable number of cases it has been said that the act must be such as will apparently result, in the usual and natural course of events if not hindered by extraneous causes, in the commission of the crime itself, and an act apparently adapted to produce the intended result is sufficient to constitute the overt act essential to an attempt. (emphasis added)
Further, in Bucklew, in reversing a judgment of conviction, we stated:
Moreover, there is nothing in the record to show that there was any extraneous cause that prevented the mayor from attempting to collect the money due the automobile company.
From this record can we say there was an actual, unequivocal intent on the *153 part of Murray to stab this officer? He had the means and every opportunity to do so. See: Hydrick v. State, 246 Miss. 448, 453, 150 So.2d 423, 425 (1963). Can we say that there were extraneous events which prevented his stabbing Officer Winters? We must answer both questions in the negative.
Conduct as revealed in this record cannot be viewed in anything less than the most somber and serious light.
We are compelled, however, to hold the defendant was clearly guilty of attempting by physical menace to put Winters in fear of imminent serious bodily harm, and punishable as such, as opposed to the offense for which he was convicted.
The case is therefore reversed solely for proper sentencing by the circuit court of attempt by Murray by physical menace to put Officer Winters, a law enforcement officer acting in the scope of his duty and office, in fear of imminent injury.
Reversed and remanded for sentencing of the crime of simple assault upon a law enforcement officer acting in the scope of his duty and office.
REVERSED AND REMANDED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM and LEE, JJ., concur.
BOWLING, J., took no part.
NOTES
[1] The pertinent portions of the indictment read as follows:

That Hezeki Cathey and Dwayne Murray late of the County aforesaid, on the 3rd day of February, 1980, in the County aforesaid, did unlawfully, wilfully and feloniously commit an aggravated assault upon Willie Winters, a Correctional officer with the Mississippi Department of Corrections at Parchman, Mississippi, while the said Willie Winters was acting within the scope of his duty and office, when the said Hezeki Cathey and Dwayne Murray unlawfully, wilfully, knowingly, purposely and feloniously grabbed the said Willie Winters and threatened bodily harm upon Willie Winters with a deadly weapon, to-wit: a sharp pointed metal instrument known as a "shank" for the purpose of causing serious bodily injury to the said Willie Winters.
[2] It should be noted this problem apparently did not escape the draftsman of the indictment or the state's instruction defining the crime with which Murray was charged. The indictment never uses the word "attempt," using instead "threaten." The state's instruction number two first uses the word "threaten," as opposed to "attempted," and then goes on to state the crime of aggravated assault might have been defined had Murray in fact injured Winters in some manner.