# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-KA-02416-SCT

*DONALD WILSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 8/22/2003 |
| TRIAL JUDGE: | HON. ANDREW C. BAKER |
| COURT FROM WHICH APPEALED: | YALOBUSHA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | TOMMY WAYNE DEFER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  BILLY L. GORE |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 12/02/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., CARLSON AND DICKINSON, JJ.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.     Donald Wilson and Sandy Tyler separated after living together and parenting two children.  Wilson notified Tyler that he was coming to visit the children on March 21, 2002. When Wilson arrived, he spoke to Tyler through the screen door of her apartment.  Tyler turned her back for a moment, and Wilson broke the lock off of the screen door and entered the apartment without Tyler's permission.  Wilson told Tyler that he had "something especially for [her]."  He showed her a gun and began loading it.  Tyler tried to run away, but Wilson chased her into a bedroom where he pushed her into a door and then hit her repeatedly with the gun. After an extended struggle, Wilson pointed the gun at Tyler and instructed her to take the

children out to his car. When Tyler refused, Wilson threatened to kill her. While Wilson was placing one of the children into the car, Tyler attempted to run to her neighbor's apartment for help. Wilson followed Tyler and dragged her by her hair and clothing away from the apartment building, and struck her repeatedly with the gun. Wilson then pointed the gun at Tyler's head and pulled the trigger several times, but the gun failed to fire. Tyler then ran into the neighbor's apartment, and Wilson fled.

¶2.     After Wilson was indicted on one count of attempted aggravated assault with a deadly weapon by a Yalobusha County Grand Jury on June 26, 2002, he was tried and found guilty on July 8, 2003. Wilson was sentenced on September 24, 2003 to serve ten (10) years in the custody of the Mississippi Department of Corrections with the last four (4) years suspended.

¶3.     Wilson appeals and asks us to review his nine assignments of error. We have and find none to have merit. Therefore, we affirm.

## ANALYSIS

*1. Wilson's proposed jury instructions D-12 and D-13*

¶4.     Wilson was charged with a violation of Miss. Code Ann. § 97-3-7(2)(b), which states:

> A person is guilty of aggravated assault if he attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; and, upon conviction, he shall be punished by imprisonment in the county jail for not more than one (1) year or in the penitentiary for not more than twenty (20) years.

At trial, Wilson submitted proposed jury instructions D-12 and D-13, which stated:

> **D-12:** If you find from the evidence in this case beyond a reasonable doubt that the Defendant, Donald Wilson, on or about March 21, 2002, in Yalobusha County, Mississippi, Second Judicial District, is guilty of Attempted Aggravated Assault, then it [sic] your duty to further determine whether the Defendant and

the Victim have a biological child together, and if you find that the Defendant and the Victim, Sandy Tyler, have a child together then it is your duty to find the Defendant not guilty of Attempted Aggravated Assault, but only guilty of Aggravated Domestic Assault, misdemeanor.

**D-13:** If you find from the evidence in this case beyond a reasonable doubt that the Defendant, Donald Wilson, on or about March 21, 2002, in Yalobusha County, Mississippi, Second Judicial District, is guilty of Attempted Aggravated Assault, then it [sic] your duty to further determine whether the Defendant and the Victim have a biological child together, and if you find that the Defendant and the Victim, Sandy Tyler, have a child together then it is your duty to find the Defendant not guilty of Attempted Aggravated Assault, but only guilty of Aggravated Domestic Assault, misdemeanor. Furthermore, if you find beyond a reasonable doubt that the Defendant is guilty of the crime of Aggravated Domestic Assault, then it is your duty to determine whether the Defendant has committed the same crime before in [sic] last five years. If, after having considered all the evidence, you determine that the Defendant has been convicted on two prior occasions within the last five years of aggravated domestic violence, then it is your duty to find the Defendant guilty of Felony Aggravated Domestic Assault, third offense.

¶5. Both proposed instructions were refused by the trial court. Wilson asserts that these were the only instructions that set forth his theory of the case, and therefore the trial court erred in denying them under *Humphrey v. State*, 759 So.2d 368, 380 (Miss. 2000).

¶6. Wilson claims that because he and Tyler have children together, he was entitled to jury instructions on the crime of aggravated domestic assault under Miss. Code Ann. § 97-3-7(4), which provides:

A person is guilty of aggravated domestic violence who commits aggravated assault as described in subsection (2) of this section against a family or household member who resides with the defendant or who formerly resided with the defendant, or a current or former spouse, or a person with whom the defendant has had a biological or legally adopted child and upon conviction, the defendant shall be punished as provided under subsection (2) of this section; *provided, that upon a third or subsequent offense of aggravated domestic violence, whether against the same or another victim and within five (5) years, the defendant shall be guilty of a felony* and sentenced to a term of imprisonment of not less than five (5) nor more than twenty (20) years.

3

*Id.* (emphasis added).

¶7.     This statute, according to Wilson, means that, in order to convict him of a felony, the State was required to show that he was a third offender. Because no such evidence was presented, he claims he could only be guilty of a misdemeanor.

¶8.     The State responds that Wilson's proposed jury instructions were confusing, misleading, and incorrect statements of the law and were properly rejected under ***Thomas v. State***, 818 So. 2d 335 (Miss. 2002). The State contends that Wilson misreads § 97-3-7 when he argues that aggravated domestic assault is a felony only upon a third conviction. The State claims that a first or second offense of aggravated domestic assault is punishable as either a felony or a misdemeanor, and becomes a mandatory felony upon the third offense. The State also argues that, for a first or second offense under § 97-3-7(4), the trial judge has the discretion to sentence the offender to less than one year (making the offense a misdemeanor), or more than one year (making the offense a felony). The State also asserts that aggravated domestic assault is not a lesser-included offense of aggravated assault, and to instruct the jury on the offense of aggravated domestic assault would have changed the identity of the crime with which Wilson was charged.

¶9.     Wilson's proposed jury instructions were properly rejected. Whether a perpetrator should be presented to a grand jury, and under what charge, are decisions generally left to the prosecutor's discretion. ***United States v. Batchelder*** 442 U.S. 114, 124, 99 S.Ct. 2198, 2204, 60 L. Ed. 2d 755 (1979); ***Bordenkircher v. Hayes***, 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) ("In our system, so long as the prosecutor has probable cause to believe

that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion."). Additionally, this Court has recently recognized that "the charge, or reduction thereof, is completely in the discretion of the prosecutor and ultimately the trial judge at the trial stage." *Powers v. State* 883 So. 2d 20, 33 (Miss. 2003). In the case sub judice, the decision to charge Wilson with attempted aggravated assault rather than aggravated domestic violence was a matter of prosecutorial discretion. The trial court correctly recognized this and did not err in refusing to give an instruction on aggravated domestic violence.

¶10. Furthermore, Wilson's proposed jury instructions incorrectly stated the law and were therefore properly rejected under *Humphrey v. State*, 759 So. 2d 368 (Miss. 2000). This Court held in *Humphrey* that "[a] defendant is entitled to have jury instructions given which present his theory of the case, however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law . . ." *Id.* at 380 (citing *Heidel v. State*, 587 So. 2d 835, 842 (Miss. 1991)).

¶11. Wilson's proposed jury instructions misinterpret § 97-3-7. Section 97-3-7 provides definitions and punishments for simple assault, aggravated assault, and also for simple domestic violence and aggravated domestic violence. Under that statute aggravated domestic violence is the same crime as aggravated assault, except that aggravated domestic violence is committed against a victim within the category of persons specified in the statute, e.g., a family member or spouse.[1] Similarly, simple domestic violence is the same crime as simple assault,

---

[1]*See* Miss. Code Ann. § 97-3-7(2) & (4). The statute provides that an assault committed against "a family or household member who resides with the defendant or who formerly resided with

5

except that simple domestic violence is committed against a person within the category listed in the statute.[2]  Furthermore, § 97-3-7 provides the same punishment for aggravated domestic violence as the punishment for aggravated assault.[3]  Thus, Wilson's sentence would not have changed had his crime been characterized as aggravated domestic violence rather than aggravated assault.

¶12.    Characterizing Wilson's offense as domestic violence would neither have reduced his crime to a misdemeanor, nor  reduced his sentence.  Wilson's proposed jury instructions D-12 and D-13 misstated the law under Miss. Code Ann. § 97-7-3, and were therefore properly rejected.  Wilson is entitled to no relief on this issue.

> 2. *Denial of post-trial motions*

¶13.    After his conviction, Wilson filed a motion for judgment notwithstanding the verdict or in the alternative for a new trial.  He alleged the following points of error:

> 1.    The State failed to make a prima facie case because there was no evidence of a deadly weapon;

---

the defendant, a current or former spouse, or a person with whom the defendant has had a biological or legally adopted child" may be characterized as domestic violence.

[2]*See* Miss. Code Ann. § 97-3-7(1) & (3).

[3]*See* Miss. Code Ann.  § 97-3-7(2) & (4), *supra*.  Aggravated domestic violence, defined in subsection (4) of the statute, is punishable under subsection (2), which defines aggravated assault. However, for aggravated domestic violence only, a third offense committed within a five year period of a prior conviction is automatically classified as a felony, and carries a mandatory minimum sentence of five years imprisonment. *See* § 97-3-7(4).  Wilson argues that this provision mandates a felony conviction *only* upon a third offense, and that the first two offenses must be classified as misdemeanors. This is incorrect.  A third offense is *automatically* a felony under § 97-3-7(4), and while a first offense is not automatically classified as a felony, it is punishable by up to twenty (20) years imprisonment, just as is a first conviction of aggravated assault under § 97-3-7(2).

6

2.  The felony charge was contrary to the laws of Mississippi, contrary to the evidence and without evidentiary support, and to allow the jury to deliberate upon this charge was error;

3.  The State failed to lay a proper foundation for the admission of the pistol into evidence;

4.  The trial court wrongfully allowed testimony about a shotgun alleged to have been in Wilson's car at the time of the crime;

5.  The trial court erred in denying proposed jury instructions D-12 and D-13.

¶14.   Wilson argues that the trial court erred in denying this motion because the verdict was legally insufficient and against the overwhelming weight of the evidence.   In support of this argument, Wilson points us to the following facts:

–  Tyler, the victim, knew that Wilson was coming to visit her and the children, but she did not contact the police, so she must not have been in fear of harm;

–  Tyler did not receive medical treatment for injuries she suffered as a result of this incident;

–  Tyler conceded that a small cut on her back was the result of Wilson pushing her into a door;

–  a police officer who responded to the incident testified that he did not know whether the gun Wilson used was loaded; and

–  one of the State's witnesses did not observe any fighting on the evening of March 21, 2002.

¶15.   These facts, according to Wilson, show that the trial court's denial of his motion for a J.N.O.V., or in the alternative for a new trial, amounts to an abuse of discretion.   Wilson claims that his conviction should be reversed based on insufficiency of the evidence, or alternatively remanded for a new trial on the basis that the jury verdict is against the overwhelming weight of the evidence.

7

¶16. Additionally, Wilson argues pro se that, because his gun failed to fire during the commission of the crime, it cannot be classified as a "deadly weapon" for purposes of the elements of § 97-3-7, and therefore, the prosecution failed to prove every element of the offense beyond a reasonable doubt.

*J.N.O.V.*

¶17. A motion for a judgment notwithstanding the verdict challenges the legal sufficiency of the evidence. **McClain v. State**, 625 So.2d 774, 778 (Miss. 1993). Furthermore, "[o]n the issue of legal sufficiency, reversal can only occur when evidence of one or more of the elements of the charged offense is such that 'reasonable and fair minded jurors could only find the accused not guilty." **Wetz v. State**, 503 So.2d 803, 808 (Miss. 1987).

¶18. The State claims the motion was properly denied in light of the evidence presented at trial. The State directs us to the testimony of the victim, Sandy Tyler, and her neighbor, Ellen Campbell, to demonstrate that the evidence was sufficient to support the guilty verdict. The State reminds us that the jury is the judge of the credibility of witnesses and evidence presented at trial and, in this case, Wilson cannot show that reasonable and fair minded jurors could only find him not guilty. We agree.

¶19. Here, the trial court's denial of the motion for a J.N.O.V. was proper. Given the evidence presented at trial, it cannot be said that reasonable and fair-minded jurors could only find Wilson not guilty of the elements of the offense charged. The record demonstrates that substantial evidence of Wilson's guilt was presented at trial. Tyler testified extensively about the events of the crime, and her testimony was corroborated by the testimony of Ellen Campbell, Police Officer Chris Pullen, and Valerie Gooch. Photographs of Tyler's injuries

were admitted. Wilson's counsel cross-examined each of these witnesses, and Wilson was given the opportunity to present evidence on his own behalf.

¶20. In light of this record, Wilson has not shown that reasonable and fair-minded jurors could only find him not guilty of the crime of attempted aggravated assault. The trial court properly denied Wilson's motion, and he is entitled to no relief on this issue.

*New Trial*

¶21. A motion for new trial challenges the weight of the evidence. **Sheffield v. State**, 749 So.2d 123, 127 (Miss. 1999). A reversal is warranted only if the trial court abused its discretion in denying a motion for new trial. **Id.** (citing **Gleeton v. State**, 716 So.2d 1083 (Miss. 1998)). Also, "it is well established that matters regarding the weight of the evidence are to be resolved by the jury." **Neal v. State**, 451 So.2d 743, 758 (Miss. 1984).

¶22. In **McFee v. State**, 511 So.2d 130, 133 (Miss. 1987), this Court explained that its authority to interfere with a jury verdict is limited. In reviewing a jury verdict, the court looks at all the evidence in the light most consistent with the verdict, and the prosecution is given "the benefit of all favorable inferences that may reasonably be drawn from the evidence." **Id.** A new trial will not be granted unless the verdict is so contrary to the overwhelming weight of the evidence that an unconscionable injustice would occur by allowing the verdict to stand. **Hawthorne v. State**, 835 So.2d 14, 21 (Miss. 2003) (citing **Groseclose v. State**, 440 So.2d 297, 300 (Miss. 1983)).

¶23. The State points out that Wilson's motion did not contain the specific language "weight of the evidence." This, the State contends, procedurally bars Wilson's appeal regarding the denial of the motion for a new trial.

9

¶24. It is true that, if an "[a]ppellant's contention that the verdict of the jury was contrary to the overwhelming weight of the evidence was not assigned as a ground for new trial in the lower court, and it may not be raised [on appeal] for the first time. A trial judge cannot be put in error on a matter which was not presented to him for decision." *Ponder v. State*, 335 So.2d 885, 886 (Miss. 1976). However, in his motion for a J.N.O.V., or in the alternative a new trial, Wilson argued that "[t]he decision of the Court to allow the jury to deliberate upon the felony charge was contrary to the evidence, without evidence to support it, and contrary to the laws of Mississippi." While Wilson did not use the words "weight of the evidence," he did argue that the verdict was "contrary to the evidence." Substantively, this language is the same as "contrary to the weight of the evidence," and is sufficient to preserve the argument for appeal.

¶25. However, we find Wilson's argument, although preserved, to be devoid of merit. In light of the evidence presented at trial, and giving the benefit of favorable inferences to the prosecution, the verdict is not contrary to the overwhelming weight of the evidence. As discussed above, the evidence of Wilson's guilt was substantial. The trial court properly denied Wilson's motion for a new trial, and Wilson is entitled to no relief on this issue.

*3. The indictment*

¶26. Wilson filed a *pro se* supplemental brief in which he makes several arguments regarding the sufficiency of the indictment. He first claims that the indictment was not "stamped mark filed" and therefore was incomplete. He claims the indictment should be quashed and his conviction reversed, referring us to **Stanford v. State**, 76 Miss. 257, 24 So. 536 (1899).

¶27. This Court has held, however, that an indictment which was not marked "filed" was procedurally defective, and objections therefor could not be raised for the first time on appeal.

10

*Jones v. State*, 356 So. 2d 1182, 1183 (Miss. 1978). *See also* **Wooten v. State**,155 Miss.726, 125 So. 103(1929)(The complaint that an indictment was not sufficiently identified because of absence of clerk's filing indorsement could not be raised for first time on appeal); *Wilcher v. State*, 152 Miss. 13, 118 So. 356 (1928) (Claimed defect in indictment as not properly signed can only be reached on motion to quash and is not available for first time on appeal). Wilson's claim is procedurally barred, and he is entitled to no relief on this issue.

¶28.    Second, Wilson says there is no evidence the indictment was presented to a grand jury and, therefore, the indictment should be quashed and his conviction reversed.   Wilson failed to assert this objection at the trial level, and therefore it is deemed waived under *Brooks v. State*, 573 So.2d 1350, 1353 (Miss. 1990).   Furthermore, even if it had been raised, this issue is without merit.   This Court has held that the filing of an indictment, the dating of it and signing of the entry by the circuit clerk is the exclusive evidence of its finding and presentation by the grand jury to the court.  *Stanford v. State*, 76 Miss. 257, 24 So. 536 (1899).   The indorsement of the word "filed" on the indictment and the date signed by the clerk is the evidence of the finding and return. *Lea v. State*, 64 Miss. 294, 1 So. 244 (1887); *Holland v. State*, 60 Miss. 939 (1883); *Cooper  v. State*, 59 Miss. 267 (1881);   *Smith v. State*, 58 Miss. 867 (1881).    Wilson's indictment was properly filed, dated, and signed by the circuit clerk, and is therefore valid under *Stanford.*  Wilson is entitled to no relief on this issue.

¶29.    Third, Wilson tells us his indictment was not accompanied by the affidavit of the grand jury foreman and is, therefore, not in compliance with Miss. Code Ann. § 99-7-9 (Rev. 2000).

11

Again, Wilson failed to assert this objection at the trial level, and therefore it is deemed waived under ***Brooks,*** 573 So.2d at 1353.

¶30.    Finally, Wilson alleges that the signature of the circuit clerk on the indictment was forged.  There is nothing in the record to support this claim.

### 4. *Legality of the sentence*

¶31.    Wilson, in his supplemental brief filed pro se, argues that the trial court abused its discretion by sentencing him illegally and violated his rights to due process.   He argues that the sentence he received is outside the sentence prescribed by Miss. Code Ann. § 97-3-7, and is therefore subject to appellate review.   Wilson argues that the crime of attempted aggravated assault is subject to a lesser penalty than aggravated assault under § 97-3-7 and is a misdemeanor rather than a felony.

¶32.    Wilson's argument is without merit.   He was convicted and sentenced for a violation of Miss. Code Ann. § 97-3-7(2), which states that "[a] person **is guilty of aggravated assault** if he (a) **attempts** to cause serious bodily injury to another . . .." The statute makes no distinction between aggravated assault and attempted aggravated assault; substantively, they are the same crime.   Section § 97-3-7 does not establish attempted aggravated assault as a misdemeanor.  Accordingly, Wilson is entitled to no relief on this issue.

### 5. *Witnesses for Wilson*

¶33.    Wilson asserts that he was denied the right to have witnesses testify on his behalf, but does not explain how the trial court denied this right.   Without further evidence or argument, this issue is devoid of merit, and Wilson is entitled to no relief on this issue.

### 6. *Effective assistance of counsel*

¶34. Wilson claims that he was denied the right to effective assistance of counsel for a variety of reasons. To obtain relief on an ineffective assistance of counsel claim, Wilson must show that his counsel's performance was deficient, and that the deficiency actually prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish deficient performance, Wilson must demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. 2065. While there are no specific guidelines for appropriate conduct, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Grayson v. State* 879 So.2d 1008, 1013 (Miss. 2004), citing *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003); *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065; *Simmons v. State*, 869 So.2d 995, 1000-01 (Miss. 2004); *Stringer v. State*, 454 So.2d 468, 476-77 (Miss.1984).

¶35. Wilson alleges that his attorney, Mitchell Creel, informed him of his trial date only 4 days before trial, and that because of the late notice, Wilson was unable to find witnesses able to testify on his behalf. Wilson claims that, had he been able to produce witnesses, he would have called Mary P. Austin, Lori L. Wilson, Aaron Vence Sr., Maurice Hackney, George Crawford, and an unnamed Mississippi State Trooper, to testify on his behalf.

¶36. There is no evidence in the record to show that Wilson was given late notice of his trial date, or that these potential witnesses were not available because of late notice. Furthermore, Wilson does not show how the testimony of these witnesses would have benefitted his case. Thus, he fails to show how the absence of these witnesses prejudiced his defense or affected the outcome of his trial as required under *Strickland*.

13

¶37.    Wilson also claims that Creel did not discuss the events of the crime with him; only called him approximately four times during the entire representation; demanded too much money for his services; and did not advise him that he was charged with attempted aggravated assault rather than a domestic violence offense until the day of trial.

¶38.    There is nothing in the record to substantiate Wilson's claims, and Wilson fails to show how these alleged deficiencies prejudiced his defense.

¶39.    Wilson further claims that Creel was ineffective because he did not object to the fact that Wilson was never arraigned, did not object to the indictment, failed to move for a mistrial on the basis that the State had tampered with evidence, and failed to seek an expert witness to testify about the malfunction of the gun.

¶40.    Again, Wilson makes no showing of how these alleged deficiencies on the part of his attorney compromised his defense.

¶41.    Wilson further asserts that his counsel was ineffective in failing to make objections and examine witnesses on a multitude of issues.   Most of Wilson's complaints are not directed at his counsel's performance but are directed at what he sees as deficiencies in the prosecution's case.    These include allegations of perjury by witnesses and alleged contradictions in testimony and evidence.   Wilson fails to show how any of his complaints amount to deficiency on the part of his counsel.  He therefore does not satisfy *Strickland*.

¶42.    Finally, Wilson contends that he was unfairly pressured into retaining Creel as his attorney.   He claims that when he arrived at court on the day of his trial, he met with his attorney and the trial judge in chambers where he was presented with a letter, and was told that if he did not sign the letter, the trial would not proceed.   There is nothing in the record to

14

substantiate Wilson's claim. An examination of the record reveals that Wilson did meet with the trial judge, his attorney, and the assistant district attorney in chambers on the morning of trial. Wilson's attorney, Mitchell Creel, requested that the court inquire as to Wilson's willingness to proceed to trial with Creel as his counsel and whether Wilson was satisfied with his representation. Wilson indicated on the record that he was satisfied with Creel's representation, and he told the judge that he wanted to proceed to trial with Creel as his attorney. There is nothing in the record to indicate that Wilson was forced to sign anything, or that he was unfairly pressured into retaining Creel as his attorney. Wilson is not entitled to any relief on this issue.

### 7. Water Valley Police Department

¶43. Without explanation, Wilson claims that evidence was "remov[ed] from the evidence room." There is nothing in the record to demonstrate that any evidence in Wilson's case was tampered with. Wilson is entitled to no relief on this issue.

### 8. Expert witness

¶44. Wilson says the assistant district attorney acted as an expert witness when he demonstrated to the jury that the gun was inoperable by "tugging and pulling" on the gun. The assistant district attorney is not an expert in weaponry, says Wilson, and therefore the trial court erred in allowing him to make this demonstration to the jury.

¶45. During closing arguments, the prosecutor used Wilson's gun to demonstrate his view of what occurred on March 21, 2002, and to explain how Wilson's actions amounted to attempted aggravated assault. He said:

> That attempt happened when this man (indicating) took a loaded pistol, he knew it was loaded and he pointed it right at her; and as these two witnesses right here told you (indicating), pulled the trigger and did everything he could to get it to fire. It's a hard gun (the attorney demonstrates). Yes, he had problems out there that night.

¶46. The trial court did not allow the prosecutor to act as an expert witness by permitting him to make these comments during closing arguments. The prosecutor demonstrated to the jury his theory of the case: that Wilson had pointed the gun at Tyler and pulled the trigger, but the gun failed to fire. The assistant district attorney never represented himself as an expert in weaponry or Wilson's particular gun, and there is nothing in the record to indicate that the court allowed his comments in closing arguments to be characterized as expert testimony. Furthermore, Wilson does not make any showing of prejudice to his defense as a result of the prosecutor's demonstration. This argument is without merit, and Wilson is entitled to no relief on this issue.

### 9. Prosecutorial conduct

¶47. Finally, Wilson argues that the assistant district attorney committed prosecutorial misconduct by contacting Mr. Crawford, the owner of the yard to which Wilson's vehicle was towed on the night of the crime, and telling him not to give out any information about Wilson's vehicle. Wilson claims that he lost the key to his vehicle on the night of the incident in question and that Mr. Crawford knew this. Wilson submits that somehow this information is exculpatory, and that the assistant district attorney wanted to keep that information a secret. Wilson claims that this amounts to malicious prosecution and a violation of his right to due process under the Fourteenth Amendment. There is nothing in the record to support this argument, and Wilson is entitled to no relief on this issue.

## CONCLUSION

¶48.    For these reasons, we affirm the circuit court's judgment.

¶49.    **CONVICTION OF ATTEMPTED AGGRAVATED ASSAULT WITH A DEADLY WEAPON AND SENTENCE OF TEN (10) YEARS WITH THE LAST FOUR (4) YEARS SUSPENDED IN THE MISSISSIPPI DEPARTMENT OF CORRECTIONS.  AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON, AND RANDOLPH, JJ., CONCUR.  DIAZ AND GRAVES,  JJ., NOT PARTICIPATING.**