# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2024-KA-01356-SCT

*CARLOS JONES, JR.*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/19/2024 |
| TRIAL JUDGE: | HON. WILLIAM HUNTER NOWELL |
| TRIAL COURT ATTORNEYS: | ALISON LESLIE FLINT |
| | JAMIE MARIE BANKS |
| | RICHARD B. LEWIS |
| | RICHARD BROOKS LEWIS, JR. |
| | NATHANIEL WILLIAMS, II |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/30/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE COLEMAN, P.J., MAXWELL AND ISHEE, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1.     Carlos Jones appeals his attempted-aggravated-assault conviction for shooting at his neighbor. Jones was sleeping during the day and got mad when someone honked a horn and woke him up. So he came out of his house and argued with his neighbor Niesha Russell. Jones pulled out a black gun, pointed it at Russell, and fired twice. Though uninjured,

Russell saw Jones point the gun at her, and she ran for her house as Jones fired two times—once while she was near the street and another time as she jumped onto her porch. When running, she heard rather than saw Jones fire. A grand jury charged Jones with attempted aggravated assault. And a unanimous jury found Jones guilty.

¶2. On appeal, Jones challenges both the sufficiency and weight of the evidence. He argues that the State failed to prove he intended to hit Russell when he shot. But intent is a question for the jury. And the jurors heard testimony that Jones pointed a gun at Russell just before shooting. Because a reasonable juror could have found Jones intended to shoot Russell, we affirm.

**Facts**

¶3. On the morning of March 26, 2024, Russell's friend Yolanda Reed delivered furniture to Russell's house in Clarksdale. Reed honked her horn when she arrived. Jones came out of his house across the street and complained about the racket. And he and Russell argued back and forth.

¶4. As Russell turned to retrieve some pictures from Reed's truck, Jones pulled a gun from a car driven by his girlfriend. Russell testified that she saw Jones retrieve the gun. Then he pointed the gun at her. Though turned somewhat, Russell clearly saw Jones point the gun at her. Russell then heard a gunshot. Fearing for her life, Russell ran up the steps onto her porch as Jones fired a second round. As she put it, the second shot "sounded so close, like it was - - he was fixing to shoot me." After shooting, Jones jumped in the car with his girlfriend and drove off.

2

¶5. When first responders arrived, Russell told them what had happened and that she had her back to Jones, running when he fired. A responding officer noted Russell was "erratic" and "afraid" when he talked to her. Police apprehended Jones and questioned him the next day.

¶6. At trial, an investigator testified without objection to Jones's statements to police. Jones had told investigators a truck horn woke him up that morning. While he admitted confronting Russell while irritated and upset, Jones claimed he merely shot into the air, then returned the gun to a family member. Investigators never found the gun.

¶7. When the State rested, Jones moved for a directed verdict. Jones argued the only eyewitness—Russell—did not see him pull the trigger. The judge denied the motion because Russell testified that Jones pointed the gun at her just before shooting, and the jury had to decide Jones's intent. Jones called no witnesses in his defense.

¶8. The jury found Jones guilty of attempted aggravated assault. The court sentenced Jones to five years' imprisonment with three years to serve followed by two years of supervised probation. After the court denied Jones's motion for a new trial, Jones appealed.

**Discussion**

¶9. On appeal, Jones raises two issues. He argues the evidence was insufficient to support the attempted-aggravated-assault conviction. He also argues the verdict was against the weight of the evidence. But from the circumstances around the shooting, a reasonable juror could infer that by pointing the gun at Russell, Jones intended to hit her. Thus, the evidence was sufficient to support his attempted-aggravated-assault conviction. For the same reason,

the verdict was not against the weight of the evidence.

### I. Sufficiency of the Evidence

¶10. "When testing the sufficiency of evidence, this Court views the evidence in the light most favorable to the State." *Williams v. State*, 305 So. 3d 1122, 1129 (Miss. 2020) (citing *Martin v. State*, 214 So. 3d 217, 222 (Miss. 2017)). "We determine if any rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (citing *Martin*, 214 So. 3d at 222). "The State receives the benefit of all favorable inferences reasonably drawn from the evidence." *Id.* (citing *Hughes v. State*, 983 So. 2d 270, 276 (Miss. 2008)).

¶11. The State charged Jones with attempted aggravated assault under Mississippi Code Section 97-3-7(2)(a)(ii) (Rev. 2020). A person is guilty of aggravated assault if he "attempts to cause . . . bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm[.]" *Id.* Attempt requires "(1) an intent to commit a particular crime; (2) a direct ineffectual act done toward its commission; and (3) the failure to consummate its commission." *Brooks v. State*, 18 So. 3d 833, 841 (Miss. 2009) (citing *Hughes*, 983 So. 2d at 278). Determining a defendant's requisite intent is a fact question for the jury to decide, considering the totality of the circumstances. *Thomas v. State*, 277 So. 3d 532, 535 (Miss. 2019) (citing *Hughes*, 983 So. 2d at 278-79; *Ryals v. State*, 305 So. 2d 354, 356 (Miss. 1974)).

¶12. Jones argues the State did not prove he intended to cause Russell bodily harm with a deadly weapon. As Jones sees it, the only relevant evidence of his intent came from an

investigator's testimony—that Jones told him he fired into the air. So the State could not show he intended to hit Russell. And there were no witnesses who contradicted him.

¶13.    But not all cases are based on direct evidence. Indeed, criminal convictions may be based solely on circumstantial evidence. And this Court has emphasized that "circumstantial evidence and direct evidence carry the same weight." *Nevels v. State*, 325 So. 3d 627, 632 (Miss. 2021) (citing *Williams*, 305 So. 3d at 1129). Here, the jury heard sufficient circumstantial evidence to infer Jones's intent. According to Russell's testimony, Jones came out of his house "going off" about the noise. Russell and Jones then "had words back and forth." At that point, Jones went to his girlfriend's car and retrieved a gun. Russell saw Jones raise the gun toward her. And when he pointed the gun at her, she turned and ran to her house as he fired twice. From these facts, the jury found beyond a reasonable doubt that Jones intended to shoot Russell. The jury simply rejected Jones's claim he fired into the air.

¶14.    This Court has previously held that pointing a gun at a victim and attempting to fire supports an attempted-aggravated-assault conviction. *Wilson v. State*, 904 So. 2d 987 (Miss. 2004). In *Wilson*, the defendant argued and fought with the victim before putting a gun to her head and pulling the trigger. *Id.* at 990. Though the gun failed to fire, the jury found the defendant guilty of attempted aggravated assault. *Id.* On appeal, this Court held that Wilson could not show "that reasonable and fair-minded jurors could only find him not guilty" based on the evidence he pointed a gun at the victim and attempted to fire. *Id.* at 994.

¶15.    Like in *Wilson*, here, the jury heard evidence that Jones pointed a gun at Russell and then pulled the trigger. The difference is that Jones's gun fired. And ultimately, whether

5

Jones intended to injure Russell was "a fact question to be resolved by the jury." ***Brooks***, 18 So. 3d at 841.

¶16.    In support of his position that the State did not sufficiently prove his intent, Jones relies on ***Murray v. State***, 403 So. 2d 149 (Miss. 1981). In ***Murray***, a prison inmate held a shank to an officer's throat. ***Id.*** at 151. The inmate told the officer that he would not be hurt if the officer gave up his keys. ***Id.*** According to the officer, the inmate was focused on obtaining the keys rather than harming the officer. ***Id.*** After prompting from another prisoner, the inmate released the officer unharmed and surrendered his shank. ***Id.*** A jury found the inmate guilty of aggravated assault. ***Id.*** This Court reversed because *it* could not say that the inmate had an "actual, unequivocal intent" to stab the officer or that there were extraneous events that prevented his stabbing the officer. ***Id.*** at 152-53; *see also* ***Bucklew v. State***, 206 So. 2d 200, 203 (Miss. 1981) (reversing a conviction of attempted embezzlement because there was no extraneous cause preventing embezzlement).

¶17.    ***Murray*** is an outlier. Simply put, the requirement of "actual, unequivocal intent" is not based on Mississippi law.

¶18.    Furthermore, the ***Murray*** Court improperly reweighed the evidence and speculated about the defendant's intent. Indeed, the ***Murray*** Court concluded: "From this record can we say there was an actual, unequivocal intent on the part of Murray to stab this officer? He had the means and every opportunity to do so." ***Murray***, 403 So. 2d at 152-53 (citing ***Hydrick v. State***, 246 Miss. 448, 453, 150 So. 2d 423, 425 (1963)). "We must answer [this question] in the negative." ***Id.*** at 153. The Court found, however, that Murray was "clearly

6

guilty" of simple assault and remanded the case for sentencing on simple assault. *Id.*

¶19.     The *Murray* Court provided no citation for the supposed requirement of "actual, unequivocal intent" other than a reference to *Hydrick*.  But *Hydrick* does not discuss, much less mention, "actual, unequivocal intent."  *Hydrick* instead dealt with jury instructions on the presumption of intent.[1] *Hydrick*, 150 So. 2d at 424. And on the issue of a directed verdict instruction, the *Hydrick* Court held that, "the [trial] court was not in error in refusing to grant defendant an instruction directing the jury to find defendant not guilty of shooting with intent to kill and murder, because we hold it to be an issue for the jury to decide under the facts." *Id.* at 426.  Therefore, *Hydrick* stands for the principle that "intent [is] a fact question for the jury to decide." *Thomas*, 277 So. 3d at 535.

¶20.     Thus, *Murray* is contrary to law and has no application here.  Furthermore, Murray repeatedly told the officer he would not be harmed in an effort to obtain the officer's keys. *Murray*, 403 So. 2d at 151.  But here, Jones fired a gun just after pointing it at Russell in anger.  The jury was responsible for determining Jones's intent based on the evidence.

¶21.     Viewing the evidence in the light most favorable to the State, a rational juror could

---

[1] The *Hydrick* Court held that a State instruction for the jury to presume intent was improper because the State had the burden to prove intent beyond a reasonable doubt. *Hydrick*, 150 So. 2d at 424-26.

> When all the evidence surrounding an alleged crime, including the testimony of eye-witnesses on both sides, has been put in evidence, an instruction on a presumption which attempts to bolster the evidence introduced, or an instruction on an inference which attempts to supply the place of a fact, required to be proven by the state, should not be given to the jury.

*Id.* at 426.

7

have found beyond a reasonable doubt that Jones intended to shoot Russell.

## II.     Weight of the Evidence

¶22.    For the same reason, Jones's conviction is not against the weight of the evidence.

¶23.    "When reviewing challenges to the weight of the evidence, this Court views the evidence 'in the light most favorable to the verdict[.]'" *Williams v. State*, 285 So. 3d 156, 160 (Miss. 2019) (alteration in original) (quoting *Little v. State*, 233 So. 3d 288, 292 (Miss. 2017)).  The jury alone resolves conflicting evidence and determines "the credibility of witnesses and the weight and worth of their testimony." *Little*, 233 So. 3d at 292 (internal quotation mark omitted) (quoting *Gathright v. State*, 380 So. 2d 1276, 1278 (Miss. 1980)). "This Court will only disturb a verdict '. . . when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.'" *Williams*, 285 So. 3d at 160 (alteration in original) (quoting *Little*, 233 So. 3d at 292).

¶24.    The State presented evidence that Jones pointed a gun at Russell, then fired.  The jury also heard conflicting evidence that Jones told police he fired into the air.  Whether Jones pointed the gun at Russell or into the air when he squeezed off two shots was a question of fact for the jury.  And the jury resolved that question in the State's favor.  Viewing the evidence in the light most favorable to the verdict, we cannot say that a miscarriage of justice occurred.

## Conclusion

¶25.    Viewing the evidence in the light most favorable to the State and verdict, the jury could reasonably infer that Jones intended to shoot Russell.  Thus, his attempted-aggravated-

assault conviction was sufficiently proved and was not against the weight of the evidence.

We affirm Jones's conviction and sentence.

¶26.    **AFFIRMED.**

**RANDOLPH, C.J., KING AND COLEMAN, P.JJ., CHAMBERLIN, ISHEE, GRIFFIS, SULLIVAN AND BRANNING, JJ., CONCUR.**