ISHEE, J.,
for the Court:
¶ 1. This appeal proceeds from the Coa-homa County Circuit Court. After a jury trial held on January 26-27, 2009, Kandrin Kordel Grace was convicted of aggravated assault and sentenced to twenty years in the custody of the Mississippi Department of Corrections (MDOC), with five years suspended and five years of post-release supervision. Grace’s co-defendant, Derrick Hampton, was convicted of attempted aggravated assault and sentenced to fifteen years in the custody of the MDOC, with five years suspended and five years of post-release supervision. After the denial of their post-trial motions, Hampton and Grace filed separate appeals to this Court. However, the two were tried together, and we address their allegations in the same opinion.
*608 FACTS
¶ 2. On March 28, 2008, officers with the Clarksdale Police Department responded to a shooting at 515 Illinois Street in Clarksdale, Mississippi. The officers found the victim, Marcion Mason, with a gunshot wound to his leg. Following an investigation, Hampton was arrested and charged with attempted aggravated assault. Grace was arrested and charged with aggravated assault for shooting Mason. Both Hampton and Grace entered not-guilty pleas. Prior to trial, Hampton filed a motion to sever, which the trial court denied.
¶ 3. At the trial, Mason testified that he was visiting Arlanders Cole at Cole’s grandmother’s house at 515 Illinois Street on the day of the shooting. Mason stepped out onto the front porch of the house to smoke a cigarette. While on the porch smoking, Mason noticed that Grace had come into the front yard of the house at 515 Illinois Street. Hampton stood in the street in front of Cole’s grandmother’s house. Mason testified that Grace asked Mason why he was looking at him. Mason and Grace exchanged words. Mason testified that he never made any threatening gestures or statements to Grace. Further, Mason testified that he was unarmed.
¶ 4. According to Mason, Grace said: ‘You still looking at me. You must want to get shot.” Mason then told Grace to “go back across the street with that gun stuff.” At that time, Mason saw Hampton and Grace aim guns at him, and Mason attempted to go back into the house. As he attempted to retreat into the house, Mason was shot in the thigh. Mason testified that he heard three or four gunshots.
¶ 5. Cole testified that he heard six gunshots, but he did not see who had fired the shots. However, Cole testified that the first two shots he heard seemed to come from the street, where Hampton stood. The remaining shots seemed to come from the front yard, where Grace had been. Mason informed Cole when he got back into the house that Grace had shot him. Cole called the Clarksdale Police Department for help.
¶ 6. Police officers arrived at 515 Illinois Street and questioned Cole and Mason. Cole informed the responding police officer that the two men who had shot at Mason ran across the street to a house located at 512 Illinois Street. Officers investigating the shooting found a bullet hole in the front door of Cole’s grandmother’s house and another bullet hole in the wall by the front door. The officers did not find any shell casings.
¶ 7. Hampton’s cousin lived in the house at 512 Illinois Street. When police officers arrived at that address, Hampton’s girlfriend, Shatiya Grace (Shatiya) answered the door. Shatiya is also Grace’s aunt. Shatiya initially told officers that she was the only person in the house at the time. However, she allowed the officers to enter and search the house. The officers found Grace and Hampton in a back bedroom of the home.
¶ 8. Upon a search of the house at 512 Illinois Street, the officers found two loaded handguns and a shotgun in the attic. Investigators conducted gunshot-residue testing on both Grace and Hampton, and both men’s samples were positive for gunshot residue. Further, Grace gave a statement to the police officers in which he admitted shooting Mason, although he stated that he had shot Mason in self-defense.
¶ 9. A Coahoma County grand jury returned an indictment against Grace for aggravated assault and against Hampton for attempted aggravated assault. The two men were tried together, but they were represented by separate counsel. *609 Both men were convicted. Hampton and Grace filed separate post-trial motions, which were denied. On appeal, Hampton argues that: (1) there is insufficient evidence to support the jury’s verdict; (2) the verdict is against the overwhelming weight of the evidence; and (3) the trial court erred in denying his motion for severance. Grace alleges on appeal that: (1) the trial court deprived him of his constitutional right to a fair and impartial trial through repeated use of extraneous and impious comments, which threatened the solemnity of the trial proceeding; and (2) the verdict is against the overwhelming weight of the evidence.
¶ 10. We find no error and affirm.
DISCUSSION
I. Whether the trial judge’s comments deprived Grace of his right to a fair and impartial trial.
¶ 11. In his first assignment of error, Grace alleges the trial court made repeated use of “jocular” and “impious” comments, thereby compromising the solemnity of Grace’s trial. Grace argues the jovial atmosphere created by the trial court is evident from the repeated indications of laughter in the trial record. Further, Grace finds error in the trial judge’s statements to potential jurors during voir dire, in which Grace contends the judge insinuated that potential jurors were being dishonest about their ability to remain unbiased. Grace argues the atmosphere created by the trial court encouraged the jury to treat the case in an “easy-going and carefree manner.”
¶ 12. Notably, Grace failed to make a contemporaneous objection to the trial judge’s statements during voir dire or to the occasional laughter, which could be heard in the courtroom. Generally, a failure to make a contemporaneous objection during trial waives an issue on appeal. McCain v. State, 971 So.2d 608, 612 (¶ 7) (Miss.Ct.App.2007). Despite his failure to object at trial, Grace urges this Court to review this assignment of error under the plain-error doctrine. In order to prevail under the plain-error doctrine, an appellant must show that there was an error in the trial court and that the error resulted in a “manifest miscarriage of justice.” Flora v. State, 925 So.2d 797, 811 (¶ 42) (Miss.2006) (quoting Williams v. State, 794 So.2d 181, 187 (¶ 23) (Miss.2001) (overruled on other grounds)). Furthermore, this Court may only apply the plain-error rule when the error complained of affects a defendant’s fundamental or substantial rights. Id. (citing Grubb v. State, 584 So.2d 786, 789 (Miss.1991)).
¶ 13. Upon examination of the trial judge’s comments during voir dire and the references to laughter during the trial, this Court cannot find the judge’s remarks denied Grace a fair trial. The comments to the jurors took place during voir dire in an effort to assure that an impartial jury was selected. Likewise, the majority of the references to laughter throughout the record occurred during voir dire, before the trial began. The remaining references to laughter during the trial occurred outside the presence of the jury, with the exception of one instance. Moreover, the trial judge made no disparaging remarks regarding Grace or his co-defendant, Hampton.
¶ 14. In McKinney v. State, 26 So.3d 1065, 1071-72 (¶¶ 29-33) (Miss.Ct.App.2009), this Court addressed an identical argument involving the same trial judge. In that case, Robert McKinney argued the trial judge’s ad-libbed and “folksy” anecdotes during voir dire created a lighthearted atmosphere - in the courtroom, which prevented the jury from seriously considering the evidence in his case. Id. at 1071 *610 (¶¶ 29-30). While acknowledging the supreme court’s holding in Roberson v. State, 185 So.2d 667, 670 (Miss.1966), in which the supreme court held that jocularity and humor are inappropriate in a criminal proceeding, this Court found that McKinney had received a fair trial. Id. at 1072 (¶ 32-33). This Court stated:
While we do not condone the apparent informality of some of the trial judge’s comments, we can find no instance where the trial court made light of the proceedings or joked at the defendant’s expense. Instead, the record reflects that the jury was made well aware of the importance of their role and their duty to conscientiously consider the evidence, apply the law, and reach a just verdict.
Id. at (¶ 33).
¶ 15. Grace has failed to show this Court that the trial judge’s occasional informality during the course of the proceedings deprived him of a fair trial. As in McKinney, the jurors in Grace’s trial received ample instructions regarding their duty as jurors to carefully consider the evidence and testimony presented at trial. The trial court’s statements fail to rise to the level of plain error. See id. at (¶ 33). This issue is without merit.
II. Whether the verdicts are against the overwhelming weight of the evidence.
¶ 16. Both Grace and Hampton argue in their separate appeals that their guilty verdicts are against the overwhelming weight of the evidence presented at trial; thus, the trial court should have granted them a new trial on that basis. This Court “will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005). In challenges to the weight of the evidence, this Court looks at the evidence presented at trial in the light most favorable to the verdict. Id. at 844-45 (¶ 19). Additionally, this Court gives the State the benefit of all favorable inferences that may be drawn from the evidence. Wilson v. State, 904 So.2d 987, 995 (¶ 22) (Miss.2004).

A. Kandrin Kordel Grace

¶ 17. Grace argues since the time of his arrest, he has maintained that he shot Mason in self-defense. Grace stated he shot Mason because he believed Mason was going to shoot him. Grace finds fault with the officers’ investigation of the shooting because they failed to perform gunshot-residue testing on Mason or Cole. Further, the police officers only searched portions of the house at 515 Illinois Street rather than searching the entire house for weapons.
¶ 18. Despite Grace’s contention that he shot Mason in self-defense, the evidence he presented at trial did not preponderate heavily against the verdict. See Bush, 895 So.2d at 844 (¶ 18) (quoting Amiker v. Drugs For Less, Inc., 796 So.2d 942, 947 (Miss.2000)). Grace told police officers he heard that Mason and Cole had made threats against him and Hampton. Grace offered the following version of events in his statement to the police:
[Hampton] went outside and the next thing I knew he was coming in the house saying that Cole and [Mason] was [sic] sending threatening words to us talking about what they was gone [sic] do something to us. They was [sic] telling people last night that they was gone [sic] do something to us. I got my aunt’s gun (.380) off the table[,] and I went across the street to talk to my uncle ... and that’s when I saw [Mason] standing in the door with a gun it look like a 38 *611 revolver. He started talking about yall better gone [sic] somewhere before one of yall get shot and I pulled out my gun which was a .380 and I started shooting at him. I shot at him first because I thought he was going to shoot me. I shot twice at [Mason] and then I went back in the house. [Hampton] was still in the house while all of this was going on. I took the gun back in house and put two more bullets in the magazine and then I put the gun in the attic because it be [sic] children in the house sometimes.
¶ 19. Shatiya testified at the trial that she could see Mason from the window of the house at 512 Illinois Street. Before the shooting occurred, she saw Mason standing on the front porch of Cole’s grandmother’s house holding something in his hand. She could not tell if the object was inside or outside of Mason’s pocket. Further, Shatiya could not identify the object because she was too far away.
¶ 20. Mason testified that he exchanged words with Grace. However, he denied that he was armed or that he made any threatening remarks or gestures toward Grace prior to the shooting. Cole also testified that he and Mason were unarmed at the time of the shooting.
¶ 21. Examining the evidence in the light most favorable to the verdict, we cannot find that the evidence presented at trial preponderated heavily against the verdict and in favor of Grace’s claim that he had acted in self-defense. The verdict is not contrary to the overwhelming weight of the evidence.

B. Derrick Hampton

¶22. Hampton argues the overwhelming weight of the evidence presented at trial established that he was not guilty of attempted aggravated assault. To support his argument, Hampton states that none of the witnesses actually saw him shoot a gun, and only one witness saw him point a weapon at Mason. Further, Hampton argues he did not test positive for gunshot residue; rather, he merely had particles indicative of gunshot residue on the palms of his hands.
¶ 23. The testimony and evidence presented at trial, when examined in the light most favorable to the verdict, support the jury’s guilty verdict. David Whitehead, a trace-evidence expert, testified at trial that he found particles indicative of gunshot residue on the palms of both of Hampton’s hands. The samples taken from the backs of Hampton’s hands were negative for gunshot residue. Whitehead testified that finding gunshot residue on someone’s hands indicates that they have fired a weapon recently, been in close proximity to someone who had fired a gun, or that they handled a gun that had been fired recently. Whitehead also testified that a person can remove gunshot residue through a number of everyday activities, including washing the hands, placing the hands in one’s pockets, or even running the hands through one’s hair. Finding the particles indicating gunshot residue on only the palms of Hampton’s hands does not lead to a conclusion that he did not fire a gun.
¶ 24. Cole testified that he saw Hampton with a gun prior to hearing the gunshots. Cole testified at trial that immediately prior to hearing the gunshots, he saw Hampton run across the street with a gun. Cole testified that the first shot sounded like it came from the street, where he had seen Hampton. Citing Ishee v. State, 799 So.2d 70, 73 (¶ 7) (Miss.2001), Hampton argues, at most, the evidence shows he pointed a gun at Mason and that pointing a gun is not an overt act sufficient for finding he attempted to commit aggravated assault against Mason. However, viewing the evidence in the light most favorable to *612 the verdict, we find there is evidence to support the State’s assertion that Hampton actually fired the weapon.
¶ 25. Mason testified at trial that he saw Hampton run across the street with a gun in his hand, which he pointed at Mason. Cole testified that he saw Hampton point a gun at Mason and that he heard shots coming from Hampton’s direction. Further, Whitehead, the State’s trace-evidence expert, testified that he found particles indicative of gunshot residue on Hampton’s palms. Giving the State the benefit of all reasonable inferences to be drawn from the evidence, we do not find that the verdict is against the overwhelming weight of the evidence presented. The jury heard the conflicting testimony presented at trial and resolved it in favor of the State. It is the duty of the jury to resolve conflicting evidence and testimony at trial, and the jury has a right to believe or disbelieve the testimony it hears. Moore v. State, 969 So.2d 153, 156 (¶ 11) (Miss.Ct.App.2007) (citing Stephens v. State, 911 So.2d 424, 436 (¶38) (Miss.2005)). This issue is without merit.
III. Whether the evidence was legally sufficient to support Hampton’s conviction for attempted aggravated assault.
¶ 26. Hampton also argues the evidence against him was insufficient to support his guilty verdict for attempted aggravated assault. In challenges to the legal sufficiency of the evidence, the appellate court should examine the evidence in the light most favorable to the prosecution and determine whether “any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Bush, 895 So.2d at 843 (¶ 16). This Court will reverse a conviction only if, upon examination of the evidence, we find that the evidence “point[s] in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty.” Id. (citation omitted). However, this Court will affirm even when the evidence is of such quality and weight that “reasonable fair-minded men in the exercise of impartial judgment might reach different conclusions on every element of the offense.” Id. In sum, a reversal on the ground of insufficient evidence means an acquittal was the only proper verdict for the defendant. Id. at 844 (¶ 18).
¶ 27. Considering all evidence presented at trial in a light most favorable to the State, we find that a rational trier of fact could have found Hampton guilty of attempted aggravated assault beyond a reasonable doubt. Both Mason and Cole testified that Hampton was in the street outside of the house at 515 Illinois Street. Both Mason and Cole testified that Hampton ran into the street with a gun. Cole testified that Hampton pointed the gun at Mason. Further, Cole testified that he heard gunshots coming from Hampton’s direction.
¶ 28. The State’s trace-evidence expert, Whitehead, testified that he found particles indicative of gunshot residue on the palms of both of Hampton’s hands. Hampton argues Whitehead’s findings indicate only that he handled a gun after it had been discharged. Otherwise, Hampton argues Whitehead would have found gunshot residue in the other samples taken from him after the shooting. However, Whitehead testified that gunshot residue could be easily removed through hand-washing and other everyday activities. Based on Whitehead’s testimony, coupled with the testimony from Cole and Mason, the jury could have inferred that Hampton had fired a gun recently.
*613 ¶ 29. Considering the evidence in the light most favorable to the State, we find that sufficient evidence was produced at trial from which the jury could determine that Hampton was guilty of attempted aggravated assault against Mason. Therefore, this issue is without merit.
IV. Whether the trial court erred in denying Hampton’s motion for severance.
¶30. In his final assignment of error, Hampton argues the trial court erred when it denied his motion for severance. In non-death-penalty cases, the decision to grant or deny a motion for severance lies in the sound discretion of the trial judge. Sanders v. State, 942 So.2d 156, 158 (¶ 10) (Miss.2006) (citing Uniform Rules of Circuit and County Court 9.03). This Court reviews a trial court’s denial of a defendant’s motion to sever under an abuse-of-discretion standard. Id.
¶ 31. The supreme court has held that “[defendants jointly indicted for a felony are not entitled to separate trials as a matter of right.” Id. (citing Price v. State, 336 So.2d 1311, 1312 (Miss.1976)). Furthermore, “[b]oth [the Mississippi Supreme Court] and the United States Supreme Court have recognized the appropriateness and importance of joint trials.” Id. (citing Cavett v. State, 717 So.2d 722, 727 (Miss.1998)). Under Duckworth v. State, 477 So.2d 935, 937 (Miss.1985), there are two factors a trial court should consider when determining whether to grant a defendant’s motion to sever. Sanders, 942 So.2d at 159 (¶ 15). The two factors are: “(1) whether the testimony of one co-defendant tends to exculpate that defendant at the expense of the other, and (2) whether the balance of the evidence tends to go more to the guilt of one defendant than the other.” Id. (citing Duckworth, 477 So.2d at 937). Lastly, “[t]he overarching consideration when evaluating these factors is whether the defendants would be prejudiced by a joint trial.” Id.
¶ 32. Hampton argues all of the above criteria are met. Hampton first argues he was found “guilty by association” because of the vast amount of evidence produced at trial implicating Grace. Further, Hampton argues there was no evidence presented at trial demonstrating his guilt. Finally, Hampton argues the balance of evidence against Grace resulted in undue prejudice to Hampton.
¶ 33. Hampton’s arguments fail. Neither defendant testified at trial, and neither defendant offered evidence or testimony through defense witnesses that would tend to exculpate one at the expense of the other. Grace called no witnesses in his defense. Hampton called Shatiya, whose testimony did not attempt to exculpate Grace at Hampton’s expense. Hampton’s defense was that he was not present at the shooting. Grace offered no testimony which undermined Hampton’s defense. Further, Grace’s argument that he acted in self-defense had no bearing on Hampton’s defense. Likewise, the balance of the evidence did not point to the guilt of one of the defendants more than the other. Grace and Hampton were charged with separate crimes. The evidence at trial showed that both men pointed and fired guns at Mason. Because Grace succeeded in shooting Mason, he was charged with aggravated assault. Hampton failed in his attempt to shoot Mason, so he was charged with attempted aggravated assault.
¶ 34. Moreover, Hampton has failed to show he was prejudiced by the trial court’s denial of his motion for severance, except to complain that he was found guilty. In Sanders, the supreme court held that a showing of prejudice was essential to obtain a reversal based on a trial court’s failure to sever a trial. The supreme court stated: “Significantly, even if this Court *614 should find that each defendant had exculpated herself at the expense of the other, absent a showing of prejudice, there are no grounds to hold that the trial court abused its discretion.” Sanders, 942 So.2d at 162 (¶ 30) (citation and internal quotation omitted).
¶ 35. This issue is without merit.
¶ 36. THE JUDGMENT OF THE COAHOMA COUNTY CIRCUIT COURT OF CONVICTION OF KANDRIN KOR-DEL GRACE OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS WITH FIVE YEARS SUSPENDED AND FIVE YEARS OF POST-RELEASE SUPERVISION; AND CONVICTION OF DERRICK HAMPTON OF ATTEMPTED AGGRAVATED ASSAULT AND SENTENCE OF FIFTEEN YEARS WITH FIVE YEARS SUSPENDED AND FIVE YEARS OF POST-RELEASE SUPERVISION, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO COAHOMA COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.