## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-00508-COA

CALVIN HUNTER                                                                      APPELLANT

v.

STATE OF MISSISSIPPI                                                              APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 04/11/2014 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | NEWTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | P. SHAWN HARRIS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| DISTRICT ATTORNEY: | MARK SHELDON DUNCAN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF COUNT I, ATTEMPTED AGGRAVATED ASSAULT ON A LAW ENFORCEMENT OFFICER, AND SENTENCED TO TWENTY YEARS, AND COUNT II, ATTEMPTED AGGRAVATED ASSAULT ON A LAW ENFORCEMENT OFFICER, AND SENTENCED TO FIFTEEN YEARS, WITH THE SENTENCE IN COUNT II TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I, BOTH IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED  - 11/24/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., ISHEE AND CARLTON, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1.    A Newton County jury convicted Calvin Hunter of two counts of attempted

aggravated assault on a law enforcement officer.  *See* Miss. Code Ann. § 97-3-7(2) (Supp.

2013). Hunter now appeals and argues that his convictions are against the overwhelming weight of the evidence. Finding no error, we affirm.

**FACTS**

¶2. A grand jury indicted Hunter for two counts of attempted aggravated assault on a law enforcement officer. *See* Miss. Code Ann. § 97-3-7(2). Each count of the indictment charged that Hunter "did willfully, unlawfully, feloniously, purposely[,] and knowingly attempt to cause bodily injury" to a law enforcement officer while the officer was acting within the scope of his duties. The indictment further charged that Hunter attempted to injure the officers "by reaching for a deadly weapon, to-wit: a knife, said knife being means likely to produce death or serious bodily harm[.]"

¶3. On August 27, 2013, Hunter got into an argument with Thelma Hunt, with whom he was living at the time. Hunt testified that Hunter returned home after drinking, and the two began to argue. Hunt asked Hunter to leave her home, and when Hunter refused, Hunt threatened to call the police. Hunt further testified that Hunter replied that he would kill her and the police if she made the call. Despite Hunter's threats, Hunt called the authorities.

¶4. While on patrol for the Union Police Department, Officer David Boatner received a dispatch call instructing him to respond to the disturbance at Hunt's home. Officer Boatner arrived at Hunt's home at the same time as Officer Jacob Moore. The officers both testified that they were wearing their police uniforms when they responded to the call.

¶5. Hunt met the two officers at the front door and invited them inside her home. Hunt

explained that she wished for Hunter to leave because he was disturbing the peace. Upon hearing loud noises and cursing coming from the back of Hunt's home, the officers investigated and encountered Hunter standing in the hallway.

¶6. Officer Boatner testified that Hunter grew irate when he saw the officers and began cursing. Officer Boatner further testified that, when he explained that Hunt wished Hunter to leave her home, Hunter responded, "I'm not going anywhere. I'll kill all y'all son[s] of [] b——." In addition to this statement, Officer Moore testified that Hunter said, "[I]f you come down here, there's going to be a killing."

¶7. According to Officer Boatner's testimony, he told Hunter that he, Hunter, was under arrest, and then Officer Boatner took a step toward Hunter. The officers testified that Hunter then lunged into the bedroom, landed on his back on the bed, and slid his right hand underneath a pillow. Thinking that Hunter was reaching for a weapon, Officer Boatner drew his gun, and Officer Moore tased Hunter. The two officers then wrestled with Hunter, and Officer Moore was forced to tase Hunter a second time. The officers eventually succeeded in securing Hunter's hands with handcuffs. When Officer Boatner looked under the right-hand pillow where Hunter had slid his hand, he found nothing. However, when Officer Boatner searched under the next pillow, on the left side of the bed, he found an open knife with its blade exposed.

¶8. Hunt testified at trial that the knife belonged to her and that she kept it for protection. Although Officer Boatner found the knife in an open position under the pillow on the bed,

3

Hunt testified that she did not have the knife out at any point on the night of August 27, 2013. Hunt further stated that she never saw the knife in Hunter's possession that evening and that she never saw him try to stab either of the officers with the knife. According to Hunt's testimony, she usually kept the knife closed and in a bowl that sat on a shelf at the head of her bed. As far as Hunt knew, the knife was still in the bowl when she called the police.

¶9. Hunter also testified at trial. He stated that he was asleep when Hunt called the police and that, when he woke up, the officers were already inside the house. Hunter further testified that he could tell the officers were about to arrest him so he began to search for his cigarettes. According to Hunter's testimony, he never cursed at the officers or threatened to kill them. Hunter testified that he was merely reaching for his cigarettes when Officer Moore tased him, and he denied trying to reach for the knife Hunt kept near the bed.

¶10. After considering the evidence and testimony, the jury found Hunter guilty on both counts of attempted aggravated assault on a law enforcement officer. For Count I, the circuit court sentenced Hunter to twenty years, and for Count II, to a consecutive term of fifteen years, with both sentences to be served in the custody of the Mississippi Department of Corrections. Hunter subsequently filed an unsuccessful motion for a new trial. Following the circuit court's denial of his motion for a new trial, Hunter appealed his convictions to this Court.

**STANDARD OF REVIEW**

4

¶11. This Court reviews the circuit court's denial of a motion for a new trial for abuse of discretion. *Griffith v. State*, 123 So. 3d 472, 475 (¶15) (Miss. Ct. App. 2013). "When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, [the appellate court] will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush v. State*, 895 So. 2d 836, 844 (¶18) (Miss. 2005) (citation omitted). This Court also weighs the evidence in the light most favorable to the verdict. *Id.*

## DISCUSSION

¶12. On appeal to this Court, Hunter argues that his two convictions for attempted aggravated assault on a law enforcement officer are against the overwhelming weight of the evidence. Hunter asserts that his actions of jumping backward onto the bed and sliding his hand under a pillow, which had nothing underneath it, fail to amount to an attempt to commit aggravated assault. He therefore asks this Court to reverse his convictions. The State, however, contends that Hunter not only announced his intent to injure the officers but also sought to fulfill his intent by the overt acts of lunging on the bed and attempting to reach Hunt's knife.

¶13. Section 97-3-7(2)(a) establishes that "[a] person is guilty of aggravated assault if he . . . attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm[.]" The statute provides for an enhanced penalty where the assault occurs upon a law enforcement officer.

5

Miss. Code Ann. § 97-3-7(2)(b).

¶14.    Mississippi caselaw establishes that "[a]n attempt is a direct movement toward the commission of the crime after the preparations have been made[.]" *Ishee v. State*, 799 So. 2d 70, 73 (¶7) (Miss. 2001) (quoting *Bucklew v. State*, 206 So. 2d 200, 202-03 (Miss. 1968)). The Mississippi Supreme Court has "defined 'attempt' to mean 'an attempt to do a certain thing, and some actual overt effort to put the intent into effect.'" *Gibson v. State*, 660 So. 2d 1268, 1270 (Miss. 1995) (citations omitted). "Furthermore, 'the act must be such as will apparently result, in the usual and natural course of events if not hindered by extraneous causes, in the commission of the crime itself, and an act apparently adapted to produce the intended result is sufficient to constitute the overt act essential to an attempt.'" *Id.* (citation omitted).

¶15.    To support his argument that his actions failed to amount to an attempt to commit aggravated assault, Hunter directs this Court's attention to the supreme court's opinions in *Gibson* and *Murray v. State*, 403 So. 2d 149 (Miss. 1981).[1] In previously discussing those two decisions, this Court stated:

> In . . . *Murray* and *Gibson*, the supreme court determined, respectively, that the evidence was insufficient to support aggravated[-]assault charges. In

---

[1] Although Hunter was charged with attempted aggravated assault and the defendants in *Gibson* and *Murray* were charged with aggravated assault, we acknowledge that section 97-3-7(2) fails to distinguish between the two offenses and that, substantively, they are the same crime. *See Wilson v. State*, 904 So. 2d 987, 996 (¶32) (Miss. 2004); *Lewis v. State*, 897 So. 2d 994, 996 (¶¶7-10) (Miss. Ct. App. 2004); *Stringer v. State*, 862 So. 2d 566, 567 (¶6) (Miss. Ct. App. 2004).

6

*Murray*, the defendant used a shank pointed toward[] a prison officer to compel the officer to give up his keys. *Murray*, 403 So. 2d at 149. Murray was convinced by fellow inmates to give up his endeavor, which he did. *Id.* at 151. In that case, the supreme court determined that it could not say that the defendant had unequivocal intent to stab the officer, even though he had the means and the opportunity to do so. *Id.* at 152-53.

In *Gibson*, the defendant pointed a gun at the chest of a police officer. *Gibson*, 660 So. 2d at 1268. After the officer demanded that he lower his weapon, the defendant complied. There[,] the supreme court stated:

> Gibson was ordered to drop the gun by the officer at [whom] the gun was pointed. The record does not reflect that Gibson was aware of any other officers in the vicinity, so Gibson, at least in his own mind, had the advantage. We do not know, from the record, why Gibson did not shoot the officer. After all[,] he had the means and every opportunity to do so. The State's suggestion that the officer's command to drop the weapon was an extraneous event [that] prevented Gibson from shooting the officer is far[-]fetched[.] *Id.* at 1270.

*Genry v. State*, 767 So. 2d 302, 311 (¶¶31-32) (Miss. Ct. App. 2000). This Court concluded that the evidence in *Murray* and *Gibson* failed to show that the defendants possessed an "unequivocal intent to cause serious bodily injury to the victim." *Id.* at (¶33). *But see Robinson v. State*, 571 So. 2d 275, 277-78 (Miss. 1990) (upholding an aggravated-assault conviction where the victim suffered no injuries because, despite the defendant's claim he only intended to scare the victim, he threatened to kill the victim, repeatedly told coworkers he planned to burn down the victim's house, and chased the victim out of her house and again threatened to kill her).

¶16. In the present case, the jury heard conflicting testimony regarding the events prior to Hunter's arrest on August 27, 2013. Hunter testified that he was simply searching for his

7

cigarettes when Officer Moore tased him. Furthermore, Hunter denied ever threatening or cursing at the officers.

¶17. By contrast, the officers testified that, while in close proximity to them, Hunter was belligerent, cursed at them, and threatened to kill them. The record reflects that the facts to which the officers testified showed that Hunter expressed a current intent to kill them. Additional testimony revealed that, when Officer Boatner stepped toward Hunter, Hunter lunged onto the bed and reached underneath a pillow with his hand. A scuffle then ensued as the officers attempted to restrain Hunter with handcuffs.

¶18. The record further reflects that Hunter continued to struggle as the officers tried to place him under arrest. Officer Moore had to tase Hunter a second time before Hunter stopped reaching under the pillow and resisting arrest. After handcuffing Hunter to ensure he was no longer a threat to their safety, the officers looked underneath the pillows on the bed. Although they found nothing under the right-hand pillow where Hunter slid his hand, they discovered a knife concealed under the left-hand pillow.

¶19. Our caselaw establishes that the jury possesses the responsibility to resolve any conflicts in the evidence and testimony presented at trial. *See Hampton v. State*, 48 So. 3d 605, 612 (¶25) (Miss. Ct. App. 2010). In light of its verdicts finding Hunter guilty of both counts of attempted aggravated assault on a law enforcement officer, the jury clearly resolved the conflicts in the trial testimony in the State's favor. As the record reflects, the officers testified that Hunter not only expressed a current intent to kill them but also engaged in overt

8

conduct to accomplish his threat. Giving the State the benefit of all reasonable inferences to be drawn from the evidence, we cannot say that Hunter's guilty verdicts are "so contrary to the overwhelming weight of the evidence that to allow [them] to stand would sanction an unconscionable injustice." *Bush*, 895 So. 2d at 844 (¶18).

¶20.    Based on the evidence and testimony presented at trial, the jury could have reasonably found that Hunter intended, and was attempting, to cause serious bodily injury or death to Officer Boatner and Officer Moore by resisting arrest, threatening to kill them, lunging on the bed, and reaching for Hunt's knife. In addition, the jury could have found that Officer Moore's action of tasing Hunter constituted an extraneous event that intervened and prevented Hunter from carrying out his intended aggravated assault upon the officers. As a result, we find no abuse of discretion by the circuit court's denial of Hunter's motion for a new trial. *See Griffith*, 123 So. 3d at 475 (¶15). Therefore, this issue lacks merit.

¶21.    **THE JUDGMENT OF THE NEWTON COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, ATTEMPTED AGGRAVATED ASSAULT ON A LAW ENFORCEMENT OFFICER, AND SENTENCE OF TWENTY YEARS, AND COUNT II, ATTEMPTED AGGRAVATED ASSAULT ON A LAW ENFORCEMENT OFFICER, AND SENTENCE OF FIFTEEN YEARS, WITH THE SENTENCE IN COUNT II TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I, BOTH IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, MAXWELL, FAIR AND WILSON, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.**

9