# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-01199-COA

**DEMARION JONES**                                                 **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                         **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/28/2022 |
| TRIAL JUDGE: | HON. CHARLES E. WEBSTER |
| COURT FROM WHICH APPEALED: | TUNICA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: MOLLIE MARIE McMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: CASEY BONNER FARMER |
| DISTRICT ATTORNEY | BRENDA F. MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/16/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., WESTBROOKS AND SMITH, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1. On October 21, 2022, a Tunica County Circuit Court jury convicted Demarion Jones (Jones) of attempted aggravated assault with a firearm enhancement. Following the conviction, the trial court sentenced Jones to ten years in the custody of the Mississippi Department of Corrections (MDOC), with five years suspended and five years to serve. Because the State charged Jones with a firearm enhancement, the court sentenced Jones to serve an additional five years in the custody of the MDOC, set to run consecutively to his sentence for attempted aggravated assault. Jones appeals, arguing that the jury verdict was against the weight of the evidence. After careful review of the evidence, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On the afternoon of February 23, 2020, Jones was walking toward his apartment unit (H-1) that he lived in with his mother (Linda Muse) at Academy Estates in Tunica, Mississippi. Jones, age sixteen at the time, saw De'Aryius Williams (a minor living with his family in unit A-2) walking toward him with his hands in his pockets. Seconds later, Jones extended his arm in the air, and holding a 9-millimeter gun, he fired two shots. Williams ducked and ran back to his apartment.

¶3. When Jones entered his apartment, his mother asked him what happened. Jones told her that someone had been shooting at him. Scared, she called 911 and told the same story. Officer Arthur Kelly of the Tunica County Sheriff's Department was the first to arrive at the scene. When Officer Kelly appeared, Jones told the officer that a masked, unidentified person had shot at him from an automobile on Beatline Road.

¶4. After hearing that a shooting had occurred on Beatline Road, Officer Kelly drove there along with Jones and his mother to search for shell casings. But Officer Kelly did not find any evidence of a drive-by shooting on Beatline Road. Sometime later, Captain Barry Collins and some investigators arrived at the apartment complex and then viewed the video footage, which was captured at the apartment complex and depicted Jones shooting at Williams. The investigators conducted a field observation, wherein they found marks on the ground where the 9-millimeter bullets had struck. Jones was later arrested.

¶5. On February 29, 2020, Investigator Favian Jones (Favian) interviewed Defendant

Jones after advising him of his rights and receiving his written consent. On August 10, 2021, a Tunica County grand jury indicted Jones for attempted aggravated assault of Williams with a firearm enhancement. On March 2, 2020, Jones was released from jail on bond. On October 21 and 22, 2022, a jury trial was held before the Honorable Charles Webster.

¶6. During trial, Williams testified that he knew Jones from school but that they were not friends and did not have a relationship. On the day of the incident, Williams saw Jones raise his arm in his direction. Williams said that when this happened, no one else was outside. His sister and stepfather were sitting inside his mother's vehicle. Williams also testified that he and Jones did not have any problems at school, on the bus, or at the apartment complex. Williams said that he never talked to Jones and that he never threatened Jones. He told the jury that Jones shot at him "for no reason."

¶7. The investigator revealed that during his interview with Jones, Jones said that he had not been provoked and that he shot at Williams because he thought Williams had a weapon. Jones also told the investigator that Williams "was the one [who] shot at him a couple days prior to [the] incident" on Beatline Road. After reviewing the case, the investigator concluded that on the day of the incident, Jones shot at Williams, and Williams was without a firearm.

¶8. Jones testified during his case-in-chief, but his story differed from Williams'. According to Jones, even though he and Williams "were just neighbors," they did not get

along. Jones testified that before the shooting, Williams had told him that "he was going to kill him and [his] little brother." Jones further testified that on the day of the shooting, Williams said "unfriendly" things to him and was holding his hands in his jacket.

¶9.     Jones gave contradictory statements to the police and the jury. For instance, there was never any shooting at Beatline Road. First, Jones told the police officer that a shooting had occurred there. Then, Jones told the investigator that Williams was the one who shot at him. But Jones later testified that he had lied about the shooting at Beatline Road because he was scared. With regard to the alleged shooting, Jones only ever told the investigator that he "thought" Williams had a weapon. But during trial, Jones said that he saw Williams with a gun, though he admitted that he had never actually seen Williams pull out the gun. Jones testified that he saw the gun through Williams' jacket.

¶10.    Jones' testimony about the alleged shooting was conflicting as well. During direct examination, Jones testified that he shot at Williams because he feared for his life and wanted to protect himself. Jones also testified that when he shot the gun toward the ground, he was not trying to cause Williams harm. Later, during Jones' cross-examination, the State played video footage of the alleged shooting. But when the State then asked Jones if he saw himself in the video, Jones said he did not see himself "at all."

¶11.    On October 21, 2022, the jury found Jones guilty of attempted aggravated assault with a firearm enhancement. Jones then filed a motion for a new trial, which the trial court denied. Jones appeals from the trial court's order denying his motion for a new trial, arguing

that the jury verdict was against the overwhelming weight of the evidence.

## STANDARD OF REVIEW

¶12.    We review a trial court's denial of a motion for a new trial based on a challenge to the weight of the evidence for abuse of discretion. *Foster v. State*, 919 So. 2d 12, 16 (¶12) (Miss. 2005).  We view the evidence in the light most favorable to the verdict and determine whether the verdict is so contrary to the overwhelming weight of the evidence that to allow the verdict to stand would sanction an unconscionable justice.  *Id*. at 16 (¶21).

## DISCUSSION

### Whether Jones' conviction was against the weight of the evidence.

¶13.    Jones argues a new trial is required because he testified at trial that he did not intend to cause physical injury to Williams.  Jones highlights his testimony that he intended to protect himself and that he shot "at the ground."  Because of this testimony, Jones argues, the State failed to prove Jones acted with an unequivocal intent to cause serious bodily injury to Williams.

¶14.    The aggravated assault statute reads as follows:

> A person is guilty of aggravated assault if he or she . . . (ii) *attempts* to use or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm . . . .

Miss. Code Ann. § 97-3-7(2)(a) (Rev. 2020) (emphasis added).  It is a well-settled principle that in order "[t]o prove an attempt to commit a crime, the State must establish '1) an intent to commit a particular crime, 2) a direct ineffectual act done toward its commission, and 3)

5

failure to consummate its commission.'" *Brown v. State*, 326 So. 3d 530, 533 (¶11) (Miss. Ct. App. 2021) (quoting *Morris v. State*, 748 So. 2d 143, 146 (¶11) (Miss. 1999)).

¶15. This Court recently reviewed a defendant's challenge to the sufficiency of the evidence presented in support of his conviction of aggravated assault. *Kirk v. State*, 362 So. 3d 93, 97 (¶10) (Miss. Ct. App. 2023). There, the defendant argued that the State failed to prove that he acted "with 'an unequivocal intent to cause serious bodily injury to the victim,'" as required for aggravated assault. *Id*. We held the defendant's argument lacked merit and explained:

> A person is guilty of aggravated assault if he (i) attempts to cause serious bodily injury to another or causes such injury . . . ." Miss. Code Ann. § 97-3-7(2)(a)(i) (emphasis added). On its face, "[t]he statute makes no distinction between aggravated assault and attempted aggravated assault; substantively, they are the same crime." *Brown*, 326 So. 3d at 533 (¶11) (quoting *Wilson v. State*, 904 So. 2d 987, 996 (¶32) (Miss. 2004)). But there is a distinction in that "the concept of *actually* causing injury . . . requires no specific intent," *State v. Hawkins*, 145 So. 3d 636, 643-44 (¶19) (Miss. 2014), while "the concept of attempt . . . embraces the element of intent." *Harris v. State*, 642 So. 2d 1325, 1327 (Miss. 1994).

*Id*. (footnote omitted). We further explained that the victim in *Kirk* "received serious physical injury," and the State had not prosecuted the defendant for *attempted* aggravated assault. *Id*. at 97 (¶11). "[T]herefore, the State was not required to establish that Kirk acted with unequivocal intent." *Id*. In other words, when a defendant is charged with attempted aggravated assault, the State must prove that the defendant acted with an "unequivocal intent" because attempt crimes require a showing of specific intent. *Armstead v. State*, 716 So. 2d 576, 583 (¶30) (Miss. 1998) (citing *McGowan v. State*, 541 So. 2d 1027, 1030 (Miss.

6

1989)).  But when a defendant is charged with causing actual injury, proof of "unequivocal intent" is not required.  *Kirk*, 362 So. 3d at 97 (¶11).

¶16.   Here, Jones was convicted of attempted aggravated assault, so a showing of unequivocal intent was required.  *See id*.  We note that Jones' reliance on *Kirk* for support is otherwise misplaced because, in *Kirk*, the Court was reviewing the defendant's sufficiency-of-the evidence challenge when discussing whether the State must prove unequivocal intent.  *Id*. at 97 (¶¶7-10).  In this case, Jones challenges the weight of the evidence, and our analysis is separate.  *See Hunter v. State*, 196 So. 3d 998, 1000 (¶11) (Miss. Ct. App. 2015).

¶17.   In *Hunter*, the defendant was charged with attempted aggravated assault because he reached for a knife near his bed when police officers came to arrest him.  *Hunter*, 196 So. 3d at 1000 (¶9).  He also threatened to kill the police officers.  *Id*.  To the contrary, the defendant testified at trial that he was not reaching for a knife but was "searching for his cigarettes."  *Id*. at 1001 (¶16).  The defendant further testified that he did not threaten or curse at the officers.  *Id*.  The defendant was convicted on two counts of attempted aggravated assault.  *Id*. at 1000 (¶10).  On appeal, the defendant argued that his convictions were against the overwhelming weight of the evidence.  *Id*. at 1001 (¶12).  We affirmed the convictions, stating that "the jury possesses the responsibility to resolve any conflicts in the evidence and testimony presented at trial."  *Id*. at (¶19) (citing *Hampton v. State*, 48 So. 3d 605, 612 (¶25) (Miss. Ct. App. 2010)).  "[T]he jury clearly resolved the conflicts in the trial

7

testimony in the State's favor." *Id*. We held that the jury could have reasonably found that the defendant intended to cause the officers serious bodily injury. *Id*. at 1002 (¶20).

¶18. Similarly, in the present case, the jury was charged with resolving conflicting evidence among Jones' testimony, Williams' testimony, the investigator's testimony, and the video footage. Williams testified that Jones shot at him on the day of the incident and demonstrated to the jury that Jones had extended his arm out in Williams' direction. Williams also testified that he had to duck and run away from the bullets. However, the investigator testified that Jones shot at Williams in order to protect and defend himself because Jones "thought" he saw Williams with a gun.

¶19. In addition, the relevant portion of the video footage shows two young men, with one man walking up to the second man. The second man extended his arm, causing the first man to duck and run in the opposite direction. At trial, the investigator identified the two men in the video as Jones and Williams. But because of the distance between the camera and the two young men, it is unclear from the video itself whether Jones or Williams possessed a firearm.

¶20. On appeal, the only determination this Court must make is whether the trial court abused its discretion by denying the motion for a new trial because allowing the verdict to stand would "sanction an unconscionable injustice." *Little v. State*, 233 So. 3d 288 (¶21) (Miss. 2017). Based on the evidence before the jury, we hold that the trial court did not abuse its discretion when it denied Jones' motion for a new trial on his weight-of-the-

evidence challenge. The jury could have reasonably inferred that the State's evidence was more credible than Jones because the jury could have easily discounted Jones' testimony. When the State cross-examined Jones, Jones admitted to the jury that he had lied to the police about a drive-by shooting occurring on Beatline Road. In furtherance of the lie, Jones and his mother rode with one of the police officers to Beatline Road to investigate the area. Jones' testimony was also somewhat conflicting. First, Jones said at trial that he did not see himself in the video raising his arm at Williams, even though he had previously told the investigator that he shot at Williams that day. Second, Jones initially testified that he shot at Williams because he felt threatened and feared for his life because Williams had threatened to kill him once before. But later, Jones said that he was shooting at the ground, not Williams.

¶21. Given this conflicting testimony by Jones himself, and the lie Jones told about the alleged drive-by shooting on Beatline Road, we find that his guilty verdict was not against the overwhelming weight of the evidence. Weighing the evidence in the light most favorable to Jones' guilty verdict, we hold that the trial court did not abuse its discretion by denying Jones' motion for a new trial. We affirm the judgment of conviction and sentencing.

¶22. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, McDONALD, LAWRENCE, SMITH AND EMFINGER, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**

9