# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-00733-COA

**ANTONIE D. KIRK**                                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                              **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/02/2021 |
| TRIAL JUDGE: | HON. DAL WILLIAMSON |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | ERIC NICHOLAS CERRA THOMAS QUITMAN BRAME JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALEXANDRA LEBRON |
| DISTRICT ATTORNEY: | ANTHONY J. BUCKLEY |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/14/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., WESTBROOKS AND SMITH, JJ.**

**SMITH, J., FOR THE COURT:**

¶1.    Antonie Kirk was convicted of aggravated assault by a Jones County Circuit Court jury and sentenced to twenty years in the custody of the Mississippi Department of Corrections, with four years suspended and sixteen years to serve, and four years of post-release supervision. On appeal, Kirk claims the trial court erred in denying his motion for a directed verdict and challenges the sufficiency and weight of the evidence presented at trial. He argues that the evidence was insufficient to support a conviction for aggravated assault, specifically pursuant to Mississippi Code Annotated section 97-3-7(2)(a)(ii) (Supp. 2016). Kirk further contends that his conviction is against the legislative intent of section

97-3-7(2)(a)(ii) and is a misapplication of the law. Finding no error, we affirm.

## STATEMENT OF THE FACTS AND PROCEDURAL HISTORY

¶2. On April 15, 2019, Kirk and two passengers, his then-girlfriend Ayterria Wright and his friend Malex Jasper, were driving home from Soso, Mississippi. At some point along their route, Kirk and Wright were arguing over her desire to end the relationship, and Wright ultimately told Kirk she was breaking up with him. Kirk stopped the vehicle at the intersection of Trace Road and Springhill Road and told Jasper to get out of the car, but Jasper refused to leave the vehicle. Instead, Wright chose to get out of the car and indicated she was going to walk home. Wright threw the promise ring Kirk had given her and stated again that she was breaking up with him. She then ran up a nearby hill. Kirk followed and ran up the hill behind her. He physically brought her back down the hill and sat her on the trunk of his car. Thereafter, Wright returned to the vehicle by force, and Kirk resumed driving.

¶3. As he was proceeding down Trace Road, Kirk's vehicle began to swerve and fishtail as he drove at speeds up to 102 miles per hour according to the vehicle's black box. His vehicle became airborne, flipped several times, struck a power pole, and landed upside down. The impact of Kirk's vehicle against the power pole severed the pole in half. Wright and Kirk both suffered injuries as a result of the wreck. Wright was diagnosed with a spinal fracture, paralysis in both legs, bilateral pneumothorax, and broken ribs. Kirk received injuries including a punctured lung and a pneumothorax.

¶4.     In December 2019, Kirk was indicted on a charge of aggravated assault against Wright pursuant to Mississippi Code Annotated section 97-3-7(2). At trial, the State presented testimony from Wright, two witnesses to the altercation at the intersection of Trace Road and Springhill Road, and a witness who observed the wreck. The State also presented testimony from the deputy who was first to respond to the scene, an investigator with the Jones County Sheriff's Department, and an investigator with the Mississippi Highway Patrol. The defense presented testimony from Kirk and Jasper, as well as testimony from an alleged witness to the scene of the wreck.

¶5.     On May 28, 2021, the jury returned a verdict finding Kirk guilty of aggravated assault. The Jones County Circuit Court entered an amended sentencing order on June 2, 2021, and Kirk filed his motion for a new trial, which the circuit court subsequently denied. Kirk appealed his conviction, arguing that the State did not provide sufficient evidence to convict him of aggravated assault because the State failed to prove that Kirk acted with intent to cause serious bodily injury. Kirk also argues his conviction is against the weight of the evidence presented.

**DISCUSSION**

¶6.     Kirk was indicted on a charge of aggravated assault against Wright. The indictment alleged that Kirk "purposely, knowingly or recklessly, under circumstances manifesting extreme indifference to the value of human life," "caused serious bodily injury" to Wright "in violation of Mississippi Code Annotated Section 97-3-7(2) (1972)." Kirk's indictment

3

further charged that he caused Wright's serious bodily injuries "either by recklessly or intentionally driving his car at a high rate of speed . . . causing his vehicle to run off the road, hit a pole and flip several times[.]"[1]

## I. Sufficiency of the Evidence

¶7. "When assessing the legal sufficiency of a conviction, this Court determines 'whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Potts v. State*, 233 So. 3d 782, 790 (¶¶30-31) (Miss. 2017) (quoting *Graham v. State*, 185 So. 3d 992, 998 (¶15) (Miss. 2016)) (applying de novo review). "[W]e view all evidence in the light most favorable to the State . . . giv[ing] the State the benefit of all favorable inferences reasonably drawn from the evidence." *Casey v. State*, 179 So. 3d 74, 80 (¶37) (Miss. Ct. App. 2015). When "reviewing whether a verdict is supported by the evidence, appellate courts are required to look at the totality of the circumstances." *Brown v. State*, 326 So. 3d 530, 533

---

[1] Kirk characterizes the issue on appeal as "[w]hether evidence presented against Antonie Kirk was insufficient to warrant a conviction for the crime of aggravated assault pursuant to Mississippi Code Annotated § 97-3-7(2)(a)(ii)[.]" However, the wording of the indictment does not charge Kirk under the language of subsection (a)(ii), which required use of a deadly weapon or other means likely to cause death or serious bodily injury. Conversely, the indictment charges and the State contends there is sufficient evidence that Kirk was driving "recklessly under circumstances manifesting extreme indifference to the value of human life" to support his conviction for aggravated assault pursuant to subsection (a)(i), which required the actor to manifest extreme indifference to the value of human life. We find from the context of the record that the State was not pursuing charges for use of the vehicle as a "deadly weapon" and therefore was not prosecuting Kirk under section 97-3-7(2)(a)(ii).

(¶10) (Miss. Ct. App. 2021).

¶8.     First, Kirk argues that the evidence was insufficient because the State failed to establish that he acted with unequivocal intent. Second, Kirk claims the evidence of his rate of "speed alone does not establish the requisite conduct" for the standard under the aggravated assault statute.

### A.     Establishing "Unequivocal Intent" to Commit Serious Bodily Injury

¶9.     At the time of the offense, aggravated assault was defined in Mississippi Code Annotated section 97-3-7(2)(a) (Supp. 2016) as follows:

> A person is guilty of aggravated assault if he (i) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; [or] (ii) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm . . . .

¶10.     "A person is guilty of aggravated assault if he (i) *attempts* to cause serious bodily injury to another or *causes* such injury . . . ." Miss. Code Ann. § 97-3-7(2)(a)(i) (emphasis added). On its face, "[t]he statute makes no distinction between aggravated assault and attempted aggravated assault; substantively, they are the same crime." *Brown*, 326 So. 3d at 533 (¶11) (quoting *Wilson v. State*, 904 So. 2d 987, 996 (¶32) (Miss. 2004)). But there is a distinction in that "the concept of actually causing injury . . . requires no specific intent,"

5

*State v. Hawkins*, 145 So. 3d 636, 643-44 (¶19) (Miss. 2014),[2] while "the concept of attempt . . . embraces the element of intent."[3] *Harris v. State*, 642 So. 2d 1325, 1327 (Miss. 1994). "To prove an attempt to commit [aggravated assault], the State must establish . . . that the defendant acted with an 'unequivocal intent to cause serious bodily injury to the victim.'" *Brown*, 326 So. 3d at 533 (¶11) (quoting *Hunter v. State*, 196 So. 3d 998, 1002 (¶15) (Miss. Ct. App. 2015)).

¶11. Wright received serious physical injuries as a result of the wreck involving Kirk's vehicle. The State was not prosecuting Kirk for a mere attempted aggravated assault; therefore, the State was not required to establish that Kirk acted with unequivocal intent. *Id*. Accordingly, we find this issue is without merit.

**B. Establishing the Requisite Recklessness for Aggravated Assault**

¶12. The second issue on appeal is whether the State presented sufficient evidence to establish that Kirk was driving recklessly under circumstances manifesting extreme indifference to the value of human life. Miss. Code Ann. § 97-3-7(2)(a)(i). Kirk argues that the State's evidence of his vehicle speed was insufficient to support his conviction.

¶13. This Court has "note[d] that, as written in section 97-3-7(2)(a)[(i)], the phrase

---

[2] *See also Bright v. State*, 986 So. 2d 1042, 1046 (¶13) (Miss. Ct. App. 2008) ("Aggravated assault has been determined by the Mississippi Supreme Court not to be a crime of specific intent.").

[3] *See also Wallace v. State*, 166 So. 3d 520, 524 (¶11) (Miss. Ct. App. 2014) (holding "[']recklessly' is the intent requirement applicable when someone is actually injured").

6

purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life is written in the disjunctive." *Bright*, 986 So. 2d at 1046 (¶14) (internal quotation marks omitted). Pursuant to section 97-3-7(2)(a)(i), "the State [is] required to prove that [the defendant] either: (1) purposely caused serious bodily injury, *or* (2) knowingly caused serious bodily injury, *or* (3) recklessly caused serious bodily injury under circumstances manifesting extreme indifference to the value of human life." *Id*. (emphasis added).

¶14.    Aggravated assault committed "recklessly under circumstances manifesting extreme indifference to the value of human life" has been declared "analogous to our definition of culpable negligence in homicide cases set forth in *Smith v. State*, 197 Miss. 802, 20 So. 2d 701 (1945)[.]" *Gray v. State*, 427 So. 2d 1363, 1367 (Miss. 1983). The Mississippi Supreme Court extended the analogous culpable-negligence standard to aggravated assault by a vehicle because the court agreed that

> [i]t is not reasonable that it was the intention of the legislature that the culpable negligence rule should not apply in cases where the injuries failed to produce death, but might apply if death insued, although the defendant in the first class of cases might be more intoxicated, more reckless and have demonstrated the ultimate in culpable negligence, but by Divine providence the life of the victim was somehow spared.

*Id*. at 1367-68.

¶15.    *Smith* defined culpable negligence as "the conscious and wanton or reckless disregard of the probabilities of fatal consequences to others as a result of the willful creation of an unreasonable risk thereof." *Id*. at 1367 (quoting *Smith*, 20 So. 2d at 701); *accord Stever v.*

7

*State*, 503 So. 2d 227, 229 (Miss. 1987) (defining culpable negligence as "negligence of a degree so gross as to be tantamount to a wanton disregard of, or utter indifference to, the safety of human life").

¶16.    In *Wilson v. State*, 173 Miss. 372, 161 So. 744 (1935), the defendant's vehicle struck a man walking across the street. The evidence indicated that the speed limit in that area was 20 miles per hour, and Wilson was driving 30 to 35 miles per hour. *Id*. at 744-45. According to the record, when Wilson was made aware of the pedestrian, he "swerved to the left, but did not slacken his speed, and the pedestrian was hit" and killed. *Id*. at 745. Wilson testified that he would have been able to avoid hitting the man with his vehicle if he had not been driving over the speed limit. *Id*. The court found that Wilson "was willfully and intentionally violating the speed law in gross excess of its limits" at the time of the accident. *Id*. Our supreme court stated,

> When the motorist exceeds the speed fixed by law, there is a want of due care as measured by the legal standard; and when the excess is so much above the legal rate of speed as to leave no doubt that the excess was distinctly intentional and willful, it is, of course, culpable in its want of due care, so far as concerns any injury which proximately results therefrom[.]

*Id*. Wilson was found guilty of driving with culpable negligence. *Id*.

¶17.    The posted speed limit on Trace Road was 45 miles per hour. Wright testified that when the wreck occurred, Kirk was driving 90 miles per hour.[4] Investigator Graves testified

---

[4] Wright also testified that at some point, Kirk was driving so fast that she felt he was trying to scare her or kill her, which caused her to state out loud that she was not afraid to die. Jasper confirmed that he heard Wright make this statement. Furthermore, in reaction to

8

that the data taken by the vehicle's black box in the moments leading up to the impact showed Kirk's speed ranging from 95 to 102 miles per hour. Jasper's testimony on behalf of the defense even admitted that Kirk was "going kind of fast" at the beginning of their travels.

¶18.    From the evidence presented, it is more than reasonable for a juror to find that Kirk was driving between 90 and 102 miles per hour on a road with a posted speed limit of 45 miles per hour at the time of the wreck. As a result, it follows that Kirk was driving at a speed that was more than double the limit and between 45 and 57 miles per hour in excess of the speed allowed by law just before impact. It is reasonable for a jury to find evidence that Kirk's "excess [was] so much above the legal rate of speed" that his "excess [speed] was distinctly intentional and willful" and "culpable in its want of due care." *Id.*

¶19.    Notably, speed was not the only characteristic of Kirk's driving that was presented to the jury as evidence. Investigator Graves provided data from the vehicle's black box reporting the vehicle at 100% acceleration through impact. He explained that this data translated to mean Kirk was pushing the accelerator pedal to the floor at maximum capacity at the point that the vehicle left the roadway. Jasper's testimony included a statement that moments before the wreck, Kirk accelerated across the intersection at Trace Road with so much force that Jasper smelled the vehicle's tires burning.

¶20.    Wright testified that Kirk swerved left across the roadway and seemed as if he was

---

Wright's statement, Jasper testified that he was "just sitting in the back like, No. I'm — — I'm scared to die."

about to hit another car. The other car blew its horn, and Kirk then swerved away. Jasper stated that he was in the back seat and had felt Kirk swerve the vehicle just before the wreck. A witness who observed the wreck, Orvilette Johnson, expressed that after the vehicle came to a stop, she "noticed they were out in a field to the left-hand side of the road; not the right, on the left."

¶21.    Investigator Graves testified that there was no automatic brake signal received by the vehicle's black box. He explained that the vehicle's brake signal appeared to be functioning because the data reported the brake switch as "Not Active," meaning the brakes were operable but had not been engaged. Additionally, Deputy Chancellor testified that he had not observed any skid marks in the area of the wreck from Kirk's tires leaving the road, on the shoulder of the roadway, or in the grass area. Investigator Madison confirmed that none of the officers responding to the scene or investigating the wreck had observed any tire marks that would have indicated Kirk applied the vehicle's brakes.

¶22.    The facts presented in this case are akin to the facts of *Faust v. State*, 212 Miss. 464, 54 So. 2d 724 (1951). The driver in *Faust* was involved in an accident that caused deadly injury to his own passenger. *Id*. The evidence included testimony that Faust had been drinking alcohol and was driving at a high rate of speed. *Id*. at 725. Other testimony conveyed that one of the passengers became alarmed by Faust's speed and screamed at Faust to let her out, but he did not. *Id*. Witnesses indicated Faust was driving 75 to 80 miles per hour while zigzagging across the road and side-swiped another vehicle. *Id*. Faust "then lost

control of the automobile in which he and the other three passengers were riding; the automobile left the highway and plunged into the road ditch and against a pine tree." *Id*. The court found the evidence sufficient to establish that Faust was driving the vehicle with culpable negligence.

¶23.    Furthermore, the facts surrounding Kirk's vehicle operation are distinguishable from the facts underlying the cases where courts have found a lack of culpable negligence. In *Dickerson v. State*, 441 So. 2d 536 (Miss. 1983), the defendant's vehicle struck another vehicle and killed the other driver. The speed limit was 35 miles per hour and testimony indicated that Dickerson was going 40 miles per hour at most. *Id*. at 539. The record revealed that Dickerson was traveling in his rightful lane but the other vehicle was parked on the roadway without any flashing lights and blocked his lane. *Id*. There were also skid marks on the road from Dickerson's vehicle, which were evidence that he had applied his brakes with force. *Id*. The court determined that Dickerson had not acted with culpable negligence because he only slightly exceeded the speed limit, drove in the correct lane, and took reasonable evasive action. *Id*. at 539-40.[5]

¶24.    In *Tate v. State*, 16 So. 3d 699 (¶14) (Miss. Ct. App. 2008), the court found that the evidence showed a loss of control by the defendant but not culpable negligence. The facts

---

[5] *See also Stever*, 503 So. 2d at 227 (A vehicle crossed the centerline and collided with the defendant's vehicle, killing the other driver. The evidence only established that the collision occurred on a curvy road with a faded centerline and poor lighting. The court found no proof of culpable negligence because "[t]here was no evidence that [the defendant] was speeding or driving recklessly as he approached the accident scene.").

11

indicated that Tate was driving through a curve on a two-lane road when his vehicle veered across the center line and collided with an oncoming vehicle. *Id*. at 702 (¶¶8-9). The accident reconstructionist initially said that Tate was speeding, but later admitted "this conclusion was based on [Tate's] truck's inability to negotiate the curve" and that "he had no evidence to determine the speed of either vehicle." *Id*. at 702 (¶8). An eyewitness traveling behind the vehicle struck by Tate "testified that it 'doesn't take much to veer over in that curve.'" *Id*. The court found no evidence showing that Tate was exceeding the speed limit or driving dangerously. *Id*. at 704 (¶14). Rather, "[a]ll the evidence showed was that Tate . . . lost control of his vehicle while coming through the curve and crossed into" the other lane. *Id*. Therefore, the *Tate* court concluded that the prosecution failed to establish culpable negligence. *Id*. at (¶15).

¶25.    Looking at the record in its entirety, it is reasonable to conclude that leading up to the wreck, Kirk was significantly exceeding the speed limit on a roadway with hills and was swerving across the roadway in a vehicle that was known to shake badly at high speeds.[6] It is also reasonable to find that Kirk did not press his brakes and attempt to take evasive action

---

[6] The record indicates that the vehicle Kirk was driving had mechanical issues that affected its operation and that Kirk was fully aware of the issues. Kirk testified that the vehicle belonged to his uncle and that his uncle previously had told him there were problems with its front end. Kirk stated he was informed that the vehicle would shake badly when it reached a speed of 70 miles per hour and was instructed to decelerate and slow the vehicle down to stop the shaking. Jasper testified that he was also aware that the vehicle Kirk was driving had mechanical problems and would shake when going over 70 miles per hour because of a bad alignment.

before his vehicle ran off the road. Thus, a reasonable jury could conclude that Kirk was driving with culpable negligence when the wreck occurred and caused serious bodily injuries to Wright.

¶26.   Kirk further argues that a reasonable jury could only reach the conclusion that he lost control of the vehicle and that Wright's injuries were the result of a tragic accident. He suggests that evidence of his vehicle "fishtailing" proves that he could not be found to have acted with the requisite recklessness for aggravated assault.  His argument is flawed, however, because losing control of a vehicle and driving with culpable negligence are not mutually exclusive concepts.

¶27.   As *Tate* illustrates, when a motorist loses control of the vehicle in the course of driving lawfully, the facts may preclude finding negligence by the motorist. *Tate*, 16 So. 3d at 699 (¶14). But like *Faust*, the loss of control may be attributed to the motorist as driving negligently when the evidence indicates the motorist was driving unlawfully or dangerously. *Faust*, 54 So. 2d 724. Thus, finding that the motorist lost control of the vehicle does not automatically negate a finder of fact holding that the motorist was culpably negligent. As previously described, the record contains evidence from multiple witnesses which supports the jury's conclusion that Kirk was driving with "wanton disregard of, or utter indifference to the safety of" Wright. Viewing the evidence in the light most favorable to the State, a reasonable jury could find Kirk guilty of aggravated assault beyond a reasonable doubt.

**II.    Weight of the Evidence**

13

¶28. "A motion for new trial challenges the weight of the evidence." *Bright*, 986 So. 2d at 1046 (¶11). "Our role as [an] appellate court is to review the trial court's decision to grant or deny a new trial for an abuse of discretion." *Little v. State*, 233 So. 3d 288, 292 (¶1) (Miss. 2017). "On appeal, we view the evidence in the light most favorable to the verdict and will not reverse unless it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bright*, 986 So. 2d at 1046 (¶11). (internal quotation marks omitted). But we do not "sit[] as thirteenth juror," meaning "[w]e do not make independent resolutions of conflicting evidence. . . . Nor do we reweigh the evidence or make witness-credibility determinations." *Little*, 233 So. 3d at 292 (¶20) (citation omitted). "[I]t is well established that matters regarding the weight of the evidence are to be resolved by the jury." *Wilson*, 904 So. 2d at 995 (¶21).

¶29. Kirk also argues his conviction is against the weight of the evidence presented. The credibility of the witnesses presented by the State and by Kirk was a matter for the jury to decide. As previously detailed, the jury weighed all the evidence presented by both the State and Kirk's defense and ultimately found that the State proved beyond a reasonable doubt that Kirk was guilty of aggravated assault against Wright.

## CONCLUSION

¶30. We find sufficient evidence to establish that Kirk acted recklessly under circumstances manifesting extreme indifference to the value of human life and caused Wright's serious bodily injuries. Viewing the evidence in the light most favorable to the State, we find that

there was sufficient evidence for a reasonable trier of fact to reach the conclusion that the essential elements of aggravated assault had been proved beyond a reasonable doubt. We further find the trial court did not abuse its discretion by denying Kirk's motion for a new trial based on the weight of the evidence.

¶31.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR.**